MARGARET V. SHERMAN *vs.* FRANKLIN J. SHERMAN, executor, & others.[1]

Suffolk.     April 2, 1957. — June 28, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Equity Pleading and Practice,* Master: summary of evidence, report of evidence. *Fraudulent Conveyance. Gift.*

Whether a master should be ordered to report evidence for the purpose of enabling the court to review his findings of fact rests in the discretion of the court. [259]

A report of evidence by a master and a summary of evidence by him under Rule 90 of the Superior Court (1954) distinguished. [259–260]

Findings negativing a contention that certain property was given outright by one of three brothers to a second brother and showing rather that such property was originally transferred by the first brother to the other two upon an oral trust with an understanding among the three that the income should be used for the benefit of them and their niece and the property should go to her after the deaths of all three, and that subsequently, after the death of the third brother, the second brother, by direction of the first brother, transferred the property to the niece and the second brother jointly, supported a conclusion that when, by arrangement between the second brother and the niece after the death of the first brother, the property was placed by the two joint owners in a trust whereby specified payments were to be made to the second brother during his life and upon his death the property was to go to the niece free of trust, the transfer in trust by the second brother was not a fraudulent conveyance as to an alleged creditor of his. [260]

BILL IN EQUITY, filed in the Superior Court on February 19, 1954.

The suit was heard by *Reardon,* C.J., upon a master's report.

*Timothy J. McInerney,* (*W. Lawrence McNeil* with him,) for the plaintiff.

*Brooks Potter,* for the defendant Bagdonas.

---

[1] Mary K. Bagdonas was the real party in interest. The other defendants were several corporations and banks against whom ancillary relief only was sought if the plaintiff prevailed.

COUNIHAN, J. This is a bill in equity in which the plaintiff seeks to compel Mary K. Bagdonas, hereinafter called the defendant, to turn over to Franklin J. Sherman, the executor under the will of Victor J. Kingsley, certain bank deposits and securities alleged to have been the property of Victor so that they may be applied in satisfaction of an alleged indebtedness of Victor to the plaintiff.

Without reciting in detail the allegations of the bill which is a long one, the plaintiff in substance alleges that for many years prior to Victor's death she performed extensive services for him, and, at his request, for his brothers, for which she was never paid, and that Victor orally promised her that if she would care for him for the rest of his life, he would repay her by leaving his entire estate to her by will. Such a will was executed in 1951 and was admitted to probate following Victor's death in 1953. She further alleges that, about three months after the execution of his will, Victor and the defendant executed a trust indenture by which practically all of the property which the plaintiff expected to receive went into a trust of which the defendant was trustee and remainderman. This property, the plaintiff alleges, originally was received by Victor from William, his brother, as an outright gift and the transfer of it into a trust was fraudulent as to the plaintiff, a creditor of Victor.

The defendant's answer denied the existence of any indebtedness from Victor to the plaintiff and further denied that there was ever a gift from William to Victor. She pleaded that this property was originally given to Victor and his brother Edward by William upon an oral trust by which Victor and Edward were to receive the income for their lives and upon their deaths all of such property was to go to the defendant and her children.

The suit was referred to a master who filed a report which was confirmed. This report was a carefully prepared and illuminating one, although necessarily long because of the contentions of the parties. No useful purpose will be served by a detailed recital of his findings or the summaries of evidence which accompanied it. The material facts found by

the master may be summarized as follows. William Kingsley, his brothers Edward and Victor, and the defendant, their niece, were the only persons who originally had any interest in the bank deposits and securities involved in this suit. William, who was a physician, early moved to Arizona and settled in Phoenix where he established a lucrative practice. In 1946 he returned to Massachusetts because of ill health and went to live with the defendant at 122 Naples Road, Brookline, where Edward and Victor were also living. William had for several years paid for the maintenance and upkeep of that home. Neither Edward nor Victor, to say the least, had been successful in the practice of their professions as dentists.

Shortly after William took up his abode with his niece, the defendant, and his two brothers, he decided to dispose of all of his property in such a way that he, his brothers, and the defendant would be taken care of during their lives. To that end he conveyed a business building which he owned in Phoenix to the defendant upon the understanding, agreed to by her, that he would control and direct the disposition of the net income of such property. This income was deposited in several checking accounts in a Boston bank in the name of the defendant and was used for the upkeep of the home on Naples Road. At about the same time in 1946 he transferred all other bank deposits and securities which he then owned to Edward and Victor upon an oral trust with the understanding, assented to by them, that although the title to the deposits and securities was in their names, he would control and direct the use of all income therefrom for the benefit of himself, Edward, Victor and the defendant, and that after he, Edward and Victor died all the remainder should go to the defendant.

This plan was followed. The master expressly found that neither Edward nor Victor ever considered the transferred property to be theirs, free from the obligations imposed by William. They never exercised any dominion over this property nor asserted any rights of ownership except those that Victor later asserted in 1950.

At the time William set up this oral trust or shortly thereafter, he consulted an attorney concerning Federal tax obligations on account of these transactions. He did not fully disclose to the attorney the understandings and agreements he had made with his brothers. Pursuant to such information as he had the attorney prepared a tax return on the assumption that outright gifts had been made and gift taxes were paid. The tax return was signed by the defendant as attorney in fact for William.

Edward died on May 13, 1947. William then directed that Victor transfer to the defendant and Victor jointly all of the property in the oral trust except an account in a Canadian bank which William directed should be turned over to the defendant. Victor was given a power of attorney to make withdrawals on this account.

William died in February, 1948. Before his death he wrote Victor several notes. In one he told Victor to give all "my money that is left back to our family." In another he told Victor that he wanted none "of my money to go to strangers." In yet another note he directed Victor to turn over to the defendant all securities and moneys in banks in Canada and Massachusetts and stated he had instructed her to pay Victor $250 a month during his life. He expressly stated that "I want all my money to go to our own people none of it to Mrs. Sherman or her children."

After William's death the defendant directed Victor's attention to these notes and he acknowledged that they were consistent with the oral trust set up by William in 1946 and with the joint ownership created in 1947. In 1950 Victor demanded a substantial part of the bank deposits and securities from the defendant. Upon her refusal they each consulted a reliable and reputable attorney. After negotiations which lasted several months, they entered into an indenture of trust prepared by their attorneys and executed in their presence. Prior to this they had agreed that the defendant turn over to Victor a specified amount of cash. The indenture provided that the defendant would hold

certain securities in trust to pay Victor $330 monthly during his life and at his death all the remainder should go to the defendant free of all trusts. The master further found that although Victor made a will on July 10, 1951, leaving all of his property to the plaintiff, a definite understanding had been arrived at by Victor and the defendant relative to the terms of the indenture prior to the execution of Victor's will. During the course of the negotiations Victor admitted to both attorneys that he felt there was an obligation to keep all the deposits and securities in the Kingsley family so that all of the property that had been William's should ultimately go to the defendant.

The master expressly found that, although the plaintiff performed many services for Victor and his brothers, at no time prior to 1950 did she expect any remuneration for her acts of kindness to Victor or his brothers nor did Victor at any time consider himself under any obligation to pay her for such services.

Upon the coming in of the report of the master the plaintiff filed forty-four objections which under Rule 90 of the Superior Court (1954) became exceptions. At the plaintiff's request the master filed summaries of evidence relating to certain exceptions. Motions of the plaintiff to recommit the report were denied by a judge. An affidavit in support of her motion to recommit was filed by the plaintiff together with a motion to establish the truth of the affidavit. Rule 46 of the Superior Court (1954). See *Cantor* v. *Cantor*, 325 Mass. 719. This motion to establish was not acted upon by the judge. A further motion to report all of the evidence before the master was denied.

An interlocutory decree was entered overruling the exceptions of the plaintiff and confirming the master's report. A final decree was entered dismissing the bill. The suit comes here upon appeals by the plaintiff from the interlocutory decree and the final decree. Exceptions were taken by the plaintiff to the denial of her motion to recommit and to the denial of her motion for a report of all the evidence before the master. The plaintiff also claims an appeal from

and an exception to the refusal of the judge to act upon the motion to establish the truth of the affidavit filed by her in support of her motion to recommit. The appeals and the exceptions all involve the same questions of law. There was no error.

Twenty-three of the plaintiff's exceptions to the master's report were not argued in the plaintiff's brief so we do not pass upon them. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. These exceptions include objections to the admission or exclusion of evidence and other matters of no present importance.

Many exceptions which were argued are repetitious. Without reciting them in detail they all refer to the master's report. Two are to the denial of motions to recommit; some are to summaries of evidence made by the master; others are to the denial of motions for further summaries of evidence; and one is to the denial of a report of all the evidence before the master. Another exception and a claim of appeal are to the failure of the judge to act upon a motion to establish the truth of an affidavit filed by the plaintiff in support of a motion to recommit.

The affidavit filed in connection with her motion to recommit ignored the master's summaries of the evidence. The master was not required to summarize other evidence which he was not obligated to believe and which he apparently did not believe.

Many of the exceptions "ask for reports of the evidence taken by the master either as a whole or as to specified matters. It has long been settled that whether a master shall report evidence for the purpose of having his findings of fact reviewed by the court rests in the discretion of the court . . . [cases cited]. Reports of evidence are to be distinguished from the summaries of evidence provided for in Rule 90 of the Superior Court (1954). Reports of evidence include all the evidence as to the points on which the court orders such reports, and are for the purpose of enabling the court to review the master's findings of fact. Such reports

are not frequently ordered. The summaries of evidence provided for in Rule 90 are not for the purpose of reviewing findings of fact, but are 'for the sole purpose of enabling the court to determine . . . [a] question of law' raised by an objection presented to the master. Such summaries are not necessarily of all the evidence or even of all the evidence on a particular point, but are only 'of so much of the evidence as shall be necessary' to determine whether the master's ruling of law was correct. . . . So far as appears either from the few instances in which summaries were requested in the objections or from the motion to recommit it is as consistent with the language used that the summaries and the evidence were desired to enable the court to decide facts as that the purpose was to present to the court questions of law. The matter of ordering evidence reported therefore remained in the discretion of the court [cases cited]." *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 679–680. This statement is particularly applicable to the instant case.

Furthermore, there are express findings of the master which are plain and clearly decisive of the merits of this cause. These findings are that "At no time down to the fall or winter of 1950 did Mrs. Sherman expect any financial remuneration for her services and acts of kindness to Victor and his brothers nor did Victor consider himself under any obligation to pay for them." A further finding is that in 1950 Victor was merely a joint owner of the property involved in this case so that he had then no interest that would pass as part of his estate upon his death. The transfer of this property to the trust in 1951 was not of Victor's sole property but was rather the joint property of Victor and the defendant. Such transfer could not therefore be fraudulent as to the plaintiff.

The plaintiff relies heavily upon the gift tax return filed late in 1946 by William and asserts that it is conclusive of her contention that William then made an outright gift to Victor and Edward. In our opinion the tax return was not conclusive in the circumstances under which it was made.

In any event it was only a piece of evidence which the master could consider and to which he could give such weight as he chose.

*Exceptions overruled.*
*Interlocutory decree affirmed.*
*Final decree affirmed with costs of*
  *appeal to the defendant Mary*
  *K. Bagdonas.*