PETER H. CLARK *vs.* WEISMAN, INCORPORATED, & another (and a companion case [1]).

Suffolk.   November 4, 1948. — April 12, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Partnership,* Accounting, Withdrawals by partners. *Corporation,* As instrumentality of partnership. *Fraud. Practice, Civil,* Amendment into suit in equity. *Equity Pleading and Practice,* Master: report of evidence.

There was no error of law nor abuse of discretion in the denial of a motion to amend an action at law into a suit in equity where a suit in equity involving the same parties and the same subject matter had been heard with the action and the parties had agreed that it would be "reasonable procedure" "to have their rights fully determined" in the suit.

Findings by a master in a suit in equity for an accounting required a decree on the basis that an individual plaintiff and the defendant had formed a partnership to carry on a business of packaging tea in tea bags manufactured by a corporate plaintiff and of selling the tea bags; that, except for two withdrawals of funds from such business made by the defendant, all withdrawals made by each partner, so far as not equal, had been agreed to by them and had become final; and that the partners were entitled to share equally in the funds of the business remaining after charging the defendant with such two withdrawals.

Statements of evidence contained in the body of a master's report should be read with summaries of evidence appended to the report in determining whether the summaries were sufficient to comply with Rule 90 of the Superior Court (1932) and to support the master's findings.

The record did not support a contention that there was a fraud upon a corporation used as an instrument in carrying out an arrangement between two individuals whereby they as partners carried on a business of packaging tea in tea bags manufactured by the corporation and of selling the tea bags and made withdrawals of profits of the business.

CONTRACT.   Writ in the Superior Court dated May 13, 1946.

The action was referred to an auditor whose findings were to be final.   Motions by the plaintiff to recommit to the

---

auditor and to amend the action into a suit in equity were denied, and motions by the defendants to confirm the auditor's report and for judgment were allowed, by *O'Brien,* J. The plaintiff alleged exceptions.

BILL IN EQUITY, filed in the Superior Court on July 20, 1946.

The suit was referred to a master. The defendant Clark appealed from interlocutory decrees entered by order of *O'Brien,* J., denying his motion to recommit to the master and overruling his exceptions to and confirming the report. By order of *Donahue,* J., there was entered a final decree stating an account between the plaintiff Weisman and the defendant Clark, ordering Clark to surrender checks for two withdrawals, providing for certain payments to Weisman and Clark, and dismissing the bill as to the plaintiff Weisman, Incorporated. The corporate plaintiff and Clark appealed from the final decree.

*J. M. Smith,* for Clark.

*Lee M. Friedman,* (*J. Sisson* with him,) for Weisman, Incorporated, and another.

QUA, C.J. This litigation began with an action at law by Peter Clark against Weisman, Incorporated, and Maurice Weisman to recover a money balance stated in the declaration to be $32,696.87. Thereafter Weisman, Incorporated, and Maurice Weisman (added as a plaintiff by amendment) brought a suit in equity against Clark and others to secure an accounting with respect to the same matters which were the subject of the action at law. The action at law was referred to an auditor, whose findings of fact were to be final. The suit in equity was referred to the same person as master. At the hearing together of the action and the suit before the auditor-master counsel for all parties agreed that it would be a reasonable procedure "to have their rights fully determined" in the suit in equity. The action at law is here on Clark's exceptions, and the suit in equity is here on appeals of Clark and of Weisman, Incorporated.

In the action at law, the auditor in his report referred to

his detailed findings in his report as master in the equity suit, and found in general terms that Clark had not sustained the burden of proof on any count in his declaration. He referred to the agreement of the parties as to having their rights determined in the equity suit, and stated that his finding for the defendants in the law action was made without prejudice to any right of Clark to an accounting in equity. The only exception argued by Clark is to the denial of a motion made by him after the coming in of the auditor's report that he be allowed to amend his action at law into a suit in equity. There was no error in this denial. The allowance of such a motion is discretionary. *Bressler* v. *Averbuck,* 322 Mass. 139, 143. There was certainly no abuse of discretion in denying it when the judge had before him at the same time a master's report in a suit in equity in which the rights of the parties could be fully determined, and in which they had agreed before the master that "the reasonable procedure" would be to determine their rights in that suit.

In the equity suit, the findings of the master disclose the situation of the parties and the nature of the controversy. "About June, 1942," Weisman started to develop a machine to manufacture tea bags. In September, 1942, Weisman, Incorporated, was chartered. Of five hundred shares, Weisman owns one, each of the other two incorporators and directors one, and Esther F. Weisman four hundred ninety-seven. The corporation is engaged in the business of packaging tea for the tea trade. Clark was a tea and coffee salesman. By the summer of 1943 the machine had been so far developed that it was capable of turning out bags in quantity. In that summer Weisman and Clark entered into an "arrangement" for carrying on together a tea bag business. The evidence, some of which is set forth by the master, was highly conflicting as to the nature of this "arrangement." It was the contention of Weisman, Incorporated, as stated in the bill, that the corporation, after its formation, engaged Clark as its employee or agent to solicit business from dealers in tea in his own name, but for its benefit, and to

receive the payments from customers and deposit them in a bank as trustee for the corporation. It was the contention of Clark that the business of selling tea bags and the bank account were his own; that from an expected profit of $1 on each thousand bags he was to give Weisman sixty cents and to retain forty cents for himself; and that he was to pay all he received over $1 per thousand bags to Weisman, Incorporated.

The master did not adopt the contention of either party. He found that in July, 1943, Weisman as an individual and Clark "entered into a business relationship or arrangement for the packaging of tea in tea bags and the sale of tea bags, which were to be manufactured by Weisman, Inc."; that purchases of tea and of materials for the bags, sales of the bags, and the bank account should be conducted in Clark's name for their joint benefit; that Clark accepted various payments made to him from time to time as his share of the current distribution of the profits of the business; that "Weisman and Clark had no definite and clear agreement or arrangement, either written or oral, for their respective interests . . . [in the bank account] or the profits to be derived from the packaging and sale of tea bags when this business was first entered upon"; that at that time "neither party had any conception of the extent to which this business would develop or the profits which it would produce"; that "they did, by their actions and conduct of this business, in effect establish an implied agreement for their respective interests in the account in the bank and in the profits of the business" which "constituted a joint undertaking of partnership" between Weisman and Clark; that Clark had control of the bank deposit for the payment of ordinary running expenses; and that Weisman had control "for the payment or withdrawal of larger amounts as in his judgment he should see fit." The master found, in substance, that at first Weisman and Clark received payments from the business on an equal basis; that later Weisman assented to all withdrawals by Clark, with the exception of two made

after this controversy arose, and that Clark accepted the amounts received by him without protest and also knew of and "accepted . . . without protest" the withdrawals by Weisman. The result of the master's findings is that while Weisman and Clark were carrying on the business before this controversy arose the respective withdrawals made by each, in so far as they were not equal, were agreed to and became final, and that in the absence of agreement to the contrary they were entitled to share equally in the funds remaining after charging Clark with the two withdrawals made after the controversy arose. G. L. (Ter. Ed.) c. 108A, § 18 (a). *Lavoine* v. *Casey,* 251 Mass. 124, 127. The final decree in the Superior Court was framed on this basis.

Clark appealed from interlocutory decrees denying his motion to recommit, overruling his exceptions to the master's report, and confirming the report. He argues that summaries of the evidence appended by the master to his report in accordance with Rule 90 of the Superior Court (1932) were insufficient to comply with the rule and, if sufficient to comply with the rule, did not warrant the findings. There is, we think, nothing in the record to show that the summaries, when read, as we think they could be, in connection with statements of evidence contained in the body of the report (see *Fulgenitti* v. *Cariddi,* 292 Mass. 321, 324), were not accurate and fair and in accordance with the rule. *Morin* v. *Clark,* 296 Mass. 479, 483–484. *Minot* v. *Minot,* 319 Mass. 253, 260–261. A detailed discussion of the exceptions and of the findings would inordinately prolong this opinion. We believe that the evidence summarized, including that contained in the body of the master's report, warranted the material findings necessary to support the final decree, and that these findings are not inconsistent with each other.

Clark's principal contention before us is that Weisman should be charged in the accounting with an amount of over $60,000 withdrawn at various times by him and through him by Weisman, Incorporated, or that real estate and

machinery purchased with these sums should now be treated as assets of the partnership. But we think that the master could take the view that the heart of the whole enterprise was Weisman's machine which, when perfected, proved highly successful; that Weisman's contribution of the use of this machine and of the manufacturing facilities of Weisman, Incorporated, and his knowledge of tea bag manufacture were of the greatest benefit and importance; and that Clark consented that these sums should be withdrawn by and through Weisman, just as Clark himself withdrew very much smaller sums, without obligation to account for them or their proceeds. The master was not obliged to believe that Clark continued, knowingly and without protest, to allow large and greatly disproportionate sums to be withdrawn from the business by or through Weisman for a period of two years, only to be accounted for by him at some future date.

Clark contends that Weisman should at any rate account for the balance of one sum withdrawn by him and used to buy a house, which sum he said he would return, and of which he did return a part. But this matter is referred to only in a summary of evidence, and there is no finding that the occurrence took place. Even if it did take place, it is not conclusive that this sum was not originally withdrawn with Clark's consent, as the master found all the sums were. It is plain that if the master believed this evidence he did not regard it as controlling, and we cannot now give it controlling effect.

Weisman, Incorporated, on its appeal, apparently still contends that the "arrangement" was between it and Clark and was not a partnership between Weisman as an individual and Clark, as the master found it was. The simple answer to this contention is the finding of the master.

Weisman, Incorporated, further contends that if there was a partnership between Weisman individually and Clark, it amounted to a fraud upon the corporation in diverting its business and profits to individuals. But this is by no means necessarily true. The corporation may well have

been a family affair. Esther F. Weisman owned all but three shares of its stock. The corporation served as a convenient instrument in carrying out the "arrangement" between Weisman and Clark. Its full consent to what was done was not improbable. It ultimately received a large proportion of the sums withdrawn by Weisman and also other sums from the partnership. There are no allegations of fraud. There are no findings of fraud. There is nothing to show that any claim of fraud was made until now. Fraud is not to be presumed. *Kerrigan* v. *Fortunato*, 304 Mass. 617, 620. We would not be justified at this stage of the case in drawing an inference of fraud from anything appearing in this record.

The contention of Weisman, Incorporated, that Clark should be further charged with $1,500 claimed to have been received by him out of the bank account in 1944 cannot be sustained because of the finding that Weisman assented to all withdrawals by Clark before 1946. The corporation's objections to the master's report do not raise "the question whether the evidence was sufficient in law to support" this general finding. Rule 90 of the Superior Court (1932). Moreover, the master appears to have summarized the evidence relating to these particular withdrawals exactly as he was requested to do, and that evidence does not show that the general finding of assent by Weisman was unsupported.

In the action at law the exceptions are overruled. In the suit in equity the decrees are affirmed.

                                          *So ordered.*