FARM-RITE IMPLEMENT COMPANY *vs.* FENESTRA
INCORPORATED & others[1]
(and a companion case[2]).

Suffolk.    November 4, 1959. — January 13, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Contract*, For fabrication of building materials, Building contract, Construction, Performance and breach. *Equity Pleading and Practice*, Appeal; Master: findings.

In the circumstances of a suit in equity against two defendants, wherein the plaintiff sought repayment by one of the defendants of a sum paid him by the plaintiff, or, if that defendant were determined not to be liable therefor, payment by the other defendant, and also sought certain relief by exoneration, the fact that the final decree, dismissing the bill as against the first defendant, ordered the second defendant to make the payment did not prevent the plaintiff's appealing from the decree. [280–281]

The mere fact that an intermediary through whom a subcontractor on a public construction project procured a fabricator of certain materials which the subcontractor was required to furnish, and the fabricator, were not "file bidders" under the general contract would not necessarily mean that the intermediary and the fabricator were not bound by terms of the general contract since they nevertheless might have agreed to be so bound. [281–282]

An exception to a conclusion by a master must be sustained where his report revealed that the conclusion was based on an erroneous rule of law and was not justified by evidence summarized by him and he did not make adequate findings or an adequate summary concerning instruments vital to a determination of the issue in question on the basis of the correct rule of law. [282–283]

─────────────────────────────────

[1] The other defendants were Federal Insurance Company and Lester M. Clark.

[2] A petition under G. L. c. 30, § 39 (as amended through St. 1935, c. 472, § 1), by Lester M. Clark against S. & A. Allen Construction Company, American Surety Company of New York (Surety) and the Commonwealth. Section 39 has been repealed by St. 1957, c. 682, § 2, but by § 3 of the 1957 act it remains applicable to certain earlier contracts, including that here involved.

Evidence summarized by a master did not support a finding by him that a fabricator of metal windows complied with the fabrication contract with respect to "bonderizing" the windows and application of a primer thereto. [283–284]

A general contractor on a public construction project, who by direction of the architect corrected defects in metal windows furnished by a subcontractor and charged the cost of correction to the subcontractor, was not shown to be entitled also to make an overhead charge to the subcontractor of a certain percentage of such cost. [286]

A master's report did not contain anything to support a bare finding that extra work performed by a subcontractor on a public construction project by oral direction of the general contractor's superintendent was not performed "in accordance with the . . . contract . . . as . . . [the subcontractor] did not have a written order from the architect." [286–287]

BILL IN EQUITY, filed in the Superior Court on April 22, 1957.

PETITION, filed in the Superior Court on May 10, 1957.

The cases were referred to a master and were heard on his report by *Thompson*, J.

*Joseph Golant*, for Clark.

*Warren G. Reed*, (*Lewis L. Wadsworth, Jr.*, with him,) for Farm-Rite Implement Company.

*Robert J. Sherer*, for Fenestra Incorporated and another.

*Lawrence H. Adler*, (*Fred Ross* with him,) for S. & A. Allen Construction Co. and another.

CUTTER, J. On May 6, 1954, the Commonwealth entered into a contract (the main contract) with S. & A. Allen Construction Company (Construction) to build the control tower at Logan International Airport. One Clark, a defendant in one of the present suits and the petitioner in the other, was the successful subbidder and subcontractor to supply the metal windows and metal frames.

Clark, who did not himself fabricate metal windows, approached Farm-Rite Implement Company[3] (Farm-Rite) for assistance. Farm-Rite also was not equipped to furnish windows of the type required, but it, to help out Clark, placed with Fenestra Incorporated[3] (Fenestra) an order

_____

[3] The names of two parties have been changed since May 6, 1954. Farm-Rite was once known as Federal Windows, Inc. Fenestra was once known as Detroit Steel Products Company. To avoid confusion, they have been referred to, in the body of this opinion, only by their later names.

dated August 19, 1954, to "[furnish galvanized . . . [s]teel [w]indows for the [c]ontrol [t]ower . . . Logan Airport . . . [i]n accordance with verbal quotation . . . . Architects drawings . . . being sent to you today." A confirmatory order, dated September 24, 1954, changed the payment terms, but made no change in "other instructions and specifications." Plans and specifications sent with this order had been received from Clark by Farm-Rite.[4] The windows as furnished by Fenestra "were invoiced" to Farm-Rite on June 27, 1955, for $11,642.88, and, on July 8, 1955, Farm-Rite paid to Fenestra this sum, for which it has not been reimbursed.

Clark issued a purchase order to Farm-Rite on September 10, 1954, which provided that all "materials [were] to be in accordance with plans and specifications." As to this, the master, later mentioned, found that Fenestra was required "to deliver the sashes fabricated [and] bonderized." Bonderization, he found, is "a process applied to a smooth . . . surface . . . to roughen it for . . . retaining . . . paint," and the bonderization "was to be according to . . . specifications" later mentioned.

The sashes were delivered to the airport on May 10, 1955. Installation of the windows was completed on August 9, 1955. In "September, there was . . . [indication] of paint peeling from the sashes."

Article III of the general conditions of the main contract provided in part that the architect "shall decide all questions . . . as to the . . . quality, [and] acceptability . . . of the several kinds of . . . materials . . . and shall decide all questions . . . as to the interpretations of the . . . specifications and as to the fulfillment of this contract on the part of the [c]ontractor, and his determination . . . shall be final and . . . shall be a condition precedent to the right of the [c]ontractor to receive any money hereunder." Clark by his subcontract with Construction "assumed the obligation to be bound by the architect's determination"

---

[4] Federal Insurance Company (Insurance) furnished a performance bond for the price ($11,564).

under art. III.  See *G. L. Rugo & Sons, Inc.* v. *Lexington,* 338 Mass. 746, 749–751; *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass. 356, 363.  The architect, after tests, "determined that the paint failure was due to lack of proper bonderization, and thereupon ordered . . . [Construction] to scrape all the paint from the windows . . . and to effect a new bonderization by . . . rubbing them down with wire brushes . . . to make a rough surface and then to have the sashes repainted.  This . . . was a different type of bonderization from that required by the original specifications. . . . [Construction] called upon . . . Clark, to do this work, which Clark refused to do.  Thereupon, . . . [Construction] hired [one] Pikens to do the work . . . at" substantial expense.

Farm-Rite on April 22, 1957, filed a bill in equity against Fenestra, Insurance, and Clark seeking, (1) that in the event of a "determination that Fenestra . . . is liable for the faulty windows, . . . Fenestra . . . be ordered to repay to . . . [Farm-Rite] what . . . [Farm-Rite] has paid Fenestra . . . and that . . . [Farm-Rite] be exonerated by Fenestra . . . and . . . Insurance . . . of any claims . . . of Clark"; and (2) that, if "there is a determination that Fenestra . . . is not liable . . . Clark be ordered to pay . . . [Farm-Rite] for the windows . . . and that . . . [Farm-Rite] be exonerated from any claims by Clark." Clark on May 10, 1957, filed his petition (see footnote 2, *supra*) seeking a decree that Construction owes him $17,035.85 (including some money claimed for extra work) for his work and seeking payment from Surety (see footnote 2, *supra*) if Construction fails to pay him.

The cases were referred to a master, from whose findings the facts already set out have been summarized.  The master concluded[5] in the case brought by Farm-Rite (1) that Fenestra and Farm-Rite were not "file bidders or subcontractors of . . . Construction . . . and are, therefore, not bound by" art. III of the general conditions of the main

---

[5] The conclusions of the master in the case brought by Clark are stated later in connection with the discussion of that case.

contract; (2) that Fenestra "carried out its agreement with . . . Farm-Rite . . . in accordance with the order given to it by . . . [Farm-Rite] and that Farm-Rite . . . cannot recover its payment from Fenestra"; and (3) that Farm-Rite "was a gratuitous intermediary of Clark . . . and . . . was merely doing a favor in lending its credit and obtaining a processor for Clark . . . and that . . . Clark . . . owes Farm-Rite" $11,642.88 with interest.

Farm-Rite and Clark filed objections to the master's report, and the master, in purported compliance with Rule 90 of the Superior Court (1954), furnished certain summaries of evidence. By interlocutory decrees the master's report was confirmed. A final decree in the case brought by Farm-Rite ordered Clark to pay to Farm-Rite the sum of $11,642.88, plus interest and costs, and dismissed the bill as against Fenestra and Insurance. In the case brought by Clark, a final decree dismissed the petition. Clark has appealed from both interlocutory and final decrees. Farm-Rite has appealed from the interlocutory decree and the final decree in the case initiated by it.

## THE CASE INITIATED BY FARM-RITE.

1. Fenestra contends that Farm-Rite cannot appeal, because it has obtained relief against Clark, one of the defendants, whose obligation to it Farm-Rite by its bill sought to have determined. See G. L. c. 214, § 3 (3); c. 231A. There is no merit to this contention. Farm-Rite may reasonably be of opinion (1) that its claim against Fenestra denied by the final decree rests on a more solid foundation than its claim against Clark; (2) that, on appeal, it may be adjudged to be liable to Clark in some amount, which would be to Farm-Rite's disadvantage unless it may recover what it claims from Fenestra; or (3) that it is entitled to exoneration, not given it by the final decree, by Fenestra from further claims of Clark, or by Clark from further claims of Fenestra. These circumstances make Farm-Rite an aggrieved party under G. L. c. 214, § 19. Farm-Rite has not been shown to have been a mere stakeholder or to have

no pecuniary or other substantial interest in the outcome of the appeal. Cf. *Ballard* v. *Maguire,* 317 Mass. 130, 131–132; *Worcester Memorial Hosp.* v. *Attorney Gen.* 337 Mass. 769, 770. Cf. also *Gordon* v. *Gordon,* 332 Mass. 197, 209.

2. Clark and Farm-Rite each contend that certain vital findings were not justified by evidence summarized by the master. These summaries were furnished in connection with proper exceptions to the master's report (see *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 679) which present questions of law for our consideration.

3. In addition to the facts found and the evidence recited in his report (see *Clark* v. *Weisman, Inc.* 324 Mass. 224, 228), the master summarized the following evidence as supporting his finding that Fenestra and Farm-Rite "were not file bidders" under the main contract "and are, therefore, not bound by" art. III of its general conditions. Clark knew of the arrangement between Farm-Rite and Fenestra. Fenestra "knew that Clark was the eventual user of the windows." The contracts between Clark and Farm-Rite and between Farm-Rite and Fenestra "consisted of purchase order[s], letters and the plans and specifications." Neither Farm-Rite nor Fenestra was a file bidder. Before the purchase orders were issued by Clark and Farm-Rite, respectively, Fenestra received §§ "1 through 15 of the specifications." Section 8, entitled "Metal Windows," contained four pages of requirements. "The windows could not have been made . . . without having" § 8. Paragraph 8–01 a of § 8 provided, "Attention is directed to the printed form of contract and [s]ection 1 of these specifications entitled 'Supplementary General Conditions' which is hereby made a part of this section." Section 1 provides in par. 1–01, "Attention is directed to the printed form of contract of which these specifications are hereby made a part." The architect, acting under art. III (quoted earlier), "decided the windows as furnished by Clark were not of the quality required by the contract."

On this summary of evidence, the finding that Farm-Rite and Fenestra were not file bidders was justified. The sum-

marized evidence disclosed, however, that the master erroneously failed to realize that, even if Farm-Rite and Fenestra were not "file bidders," they could be bound by art. III if they in fact agreed to be bound by art. III. The master thus did not apply the right rule of law and did not make findings essential to provide an adequate basis for a decree. See *Frank* v. *Frank*, 335 Mass. 130, 136–137. There are no findings (as opposed to summaries of evidence) (a) whether Farm-Rite and Fenestra, even if not "file bidders," had agreed to be bound by art. III, and (b) of the precise contents of, and instruments making up, the contracts between Clark and Farm-Rite and between Farm-Rite and Fenestra. These contracts were clearly appropriate subjects of subsidiary findings and all essential parts of relevant instruments should have been included in, or attached to, the summaries of evidence. Doubtless, they would have been ordered to be so included if there had been a motion to recommit the report supported by proper affidavit under Rule 46 of the Superior Court (1954). See *Cantor* v. *Cantor*, 325 Mass. 719, 721.

As no evidence summarized indicates any oral agreement affecting the specifications, if the written instruments were fully before us, we would be in as good a position as the master to determine what the agreements were. See *Ober* v. *National Cas. Co.* 318 Mass. 27, 30; *Forte* v. *Caruso*, 336 Mass. 476, 480–481. See also *Taylor* v. *Gowetz*, 339 Mass. 294, 300. From so much of the written contracts as has been summarized we observe much to indicate that there was no justification for the master's conclusion that Fenestra was not bound by art. III.[6] We, however, cannot rule now

---

[6] The references in the purchase orders to the plans and specifications point to their incorporation by reference, as does the evidence that the specifications were in Fenestra's hands before the orders were given. Fenestra clearly knew that Clark in effect had delegated to it all his subcontract obligations with respect to fabricating the windows. The parties, knowing this, must have contemplated that failure to satisfy the specifications (in the determination of the architect) would make the windows of little use to Clark or to Farm-Rite, and might expose them to a substantial liability. These considerations all are consistent with the view that the parties' objective intention shown by the written instruments was that Fenestra must perform in accordance with the specifications, in turn incorporating art. III by reference.

that there was no such justification, without having the complete contracts before us, for in the unsummarized letters (which the summary of evidence states were a part of the contracts) and in the portions of the written instruments not summarized, there may be something which will justify the master's conclusion. In any event, because the master's conclusion is not shown to be justified by the evidence summarized and appears to be based on the erroneous assumption that art. III can only bind file bidders, Farm-Rite's exception numbered 1 and Clark's exception numbered 3 to the master's report should have been sustained.

4. Farm-Rite's exceptions numbered 2 and 3 (and, less directly, its exceptions numbered 4 and 5) and Clark's exception numbered 4 related to the master's finding that Fenestra "carried out its agreement with" Farm-Rite "in accordance with the order given to it by" Farm-Rite and that Farm-Rite cannot recover its payment to Fenestra. With respect to these exceptions, the master furnished the following summary of evidence in addition to evidence already mentioned above. Paragraph 8–04 of the specifications provided: "f. Bonderizing and Shop Painting. (1) All windows and allied parts . . . shall be emersed [*sic*] in bonderite solution and rinsed in . . . chromic acid. (2) After air drying . . . apply one coat of DuPont's Rust-inhibitive Primer or equal. . . . (3) Field coats of paint shall be as specified in Section 21, PAINTING." Paragraph 8–01 of the specifications, as has been stated above, directed attention to par. 1–01 of the general conditions, which in turn referred to the printed form of contract. Article I of the contract provided in part, "(g) Whenever the words 'or equal' . . . are used . . . this means 'equal in the opinion of the [a]rchitect.'"[7] The architect was not "informed that the windows were being fabricated by" Fenestra. Fenestra did not use "DuPont's Rust-inhibitive

---

[7] Paragraph 1–12 of the supplementary general conditions provides, "The words 'or equal' . . . mean any material . . . which in the opinion of the [a]rchitect is equal in quality, durability, appearance, strength and design to the material . . . described and will perform adequately the functions imposed by the general design."

Primer" but used Boydell's Rust-inhibitive Primer." The architect did not "express the opinion that Boydell's . . . [p]rimer was equal to . . . 'DuPont's . . . [p]rimer.'" Fenestra did not place the "windows in 'bonderite solution,' but in 'grenadine'" solution. Bonderite was developed and licensed by Parker Rust Proof Company and grenadine was a product of another company. "'[B]onderize,' 'bonderization' and 'bonderite solution' were trade names of . . . the Parker . . . Company." There were other methods of accomplishing the purpose of bonderizing, viz. to render a galvanized surface capable of being painted. "The architect . . . determined that paint failure was due to lack of proper bonderization" and issued the orders already mentioned for refinishing the windows by another method. "This was not bonderizing or applying bonderite solution."

The master in his original report referred to testimony by one expert that tests had showed "very little, if any, bonderization on the sash" and by another expert "that the sash revealed bonderization well within . . . recognized limits." The master, however, did not refer to this testimony in his summaries of evidence under Rule 90.

Even if the master did not believe that Fenestra (a) used a different primer from that specified, (b) failed to obtain the architect's approval of Boydell's primer, and (c) used grenadine solution instead of bonderite, this summary of evidence did not justify the master's finding that Fenestra had complied with its contract. Disbelief of evidence of noncompliance does not establish that there was compliance. Although some evidence of immersion in bonderite solution may have been provided by an affidavit of Fenestra's treasurer, the affidavit did not show use of DuPont's primer or approval of the architect of the use of a substitute. Farm-Rite's exceptions 2 and 3, and Clark's exception 4, to the master's report should have been sustained.

As the master did not consider that there had been any breach by Fenestra of the contract with Farm-Rite (or by Farm-Rite of its contract with Clark), he made no findings upon whether such a breach, if it existed, was material.

There must be such findings to provide any proper basis for a decree, unless he finds that in all respects Fenestra did comply with the specifications. If art. III of the main contract is binding upon Farm-Rite and Fenestra, the architect's determination will be conclusive on this issue. If art. III is not thus binding, separate findings about this issue will be necessary.

## THE CASE BROUGHT BY CLARK.

In the case brought by Clark against Construction, the master found that, apart from a charge back for refinishing the windows, Construction owed Clark a balance of $17,035.85. Against this, Construction charged back to Clark $14,018.53, part of which was the amount paid to Pikens for refinishing the windows. The master also found (a) that Clark actually performed for Construction extra work in the sum of $2,640 which "Clark testified he did" on oral instructions of Construction's superintendent, and (b) that this work was "not . . . in accordance with the . . . contract . . . as Clark . . . did not have a written order from the architect and . . . Construction . . . in turn was not paid for these items by the Commonwealth." In these circumstances, the master stated that he was "compelled to find that . . . Construction . . . owes Clark . . . nothing."

The master, with respect to the charge back, stated "that there was dependable evidence . . . that the paint failure was . . . caused [not] by lack of bonderization . . . [by] Fenestra, but rather by the use of an alkyd paint on specification by the architect." Nevertheless, he ruled that "as a matter of law . . . the judgment of the architect cannot be questioned by Clark or . . . Construction . . . and . . . is . . . binding on the two parties." The master found that the architect acted in good faith.

Clark in his case argues only his exceptions 6 and 7 to the master's report. Other exceptions, which relate only to the case brought by Farm-Rite, have been dealt with already.

Exception 6 in effect asserts that there was no evidence sufficient to support a charge back to Clark by Construction of a ten per cent overhead charge for the benefit of Construction based on the $12,744.12 paid by Construction to Pikens for refinishing the windows. The master, in addition to findings and evidence summarized in his report, merely reports evidence of the addition of this ten per cent charge by Construction.

The evidence thus reported shows no subcontract provision or trade custom sufficient to justify the ten per cent overhead charge. The circumstance that the pleadings in the case brought by Farm-Rite indicate that Clark billed Farm-Rite for such a charge, in addition to the $14,018.53 charged back to Clark by Construction, does not adequately establish the existence of such a trade custom. The master's finding with respect to the amount of Construction's charge back to Clark is not supported by the evidence summarized by him. See *Morin* v. *Clark*, 296 Mass. 479, 483.

Exception 7 raises the questions (a) whether there was error in law in the master's finding that the extra work amounting to $2,640 was not performed in accordance with the main contract because Clark did not have a written order from the architect for such work, and (b) whether this finding was inconsistent with subsidiary findings. The master declined to summarize any evidence with respect to this finding because the report contained "sufficient facts to enable the court to pass on this objection as a matter of law."

The master's report says little more on this point than the statement already quoted that, because there was no written order, these "extras . . . were not performed in accordance with the terms of the contract." This inadequate statement may imply that Clark's subcontract (in accordance with provisions usual in such subcontracts) did require such a written order and that the work was extra work requiring a written order under the subcontract and perhaps under the main contract. Those facts are not found or stated as evidence in the master's report, nor are they stated in any

summary of evidence. Even though Clark did not move to recommit the report for a further summary of evidence and support his motion by suitable affidavit under Rule 46 (see *Cantor* v. *Cantor*, 325 Mass. 719, 721), the master merely by making the finding itself has not stated evidence sufficient to justify it. See *Morin* v. *Clark*, 296 Mass. 479, 482–483. Exception 7 should have been sustained.

Obviously to prevail in further proceedings, Clark must show either that his subcontract (including provisions of the main contract incorporated by reference) required no written order, or that the extra work was apart from the subcontract in some respect, e.g. that Construction, already bound to do it under the main contract, arranged to have Clark do it separately from Clark's subcontract, in special circumstances which would render inapplicable the considerations mentioned in *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Constr. Co.* 339 Mass. 356, 362.

We do not reach the question, argued by Construction, whether any recovery by Clark against Construction upon the subcontract is barred by the stringent rule in *Sipley* v. *Stickney*, 190 Mass. 43, 47–48, and cases which purport to follow it. See *Swaney* v. *Clark-Wilcox Co.* 331 Mass. 471, 474–476. Cf. *Ficara* v. *Belleau*, 331 Mass. 80, 81–82; Corbin, Contracts, §§ 1123–1126; Williston, Contracts (Rev. ed.) § 842, n. 4. We cannot now say whether the rule will prove to be relevant when adequate and proper findings shall have been made. For example, it may appear that, as to some elements of the recovery claimed by Clark, the contractual arrangement upon which the claim rests may be sufficiently separate from the subcontract to make the rule wholly inapplicable.

## Disposition of the Cases.

6. The interlocutory decrees and the final decrees are reversed. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*