FARM-RITE IMPLEMENT COMPANY vs. FENESTRA
INCORPORATED & OTHERS.[1]

Suffolk.   February 9, 1961. — April 7, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Contract*, For fabrication of building materials, Building contract. *Equity
Pleading and Practice*, Master: recommittal; Report of material facts.

The record in a suit in equity supported a conclusion by a master that a
   fabricator of metal windows to be used on a public building construc-
   tion project, to whom were furnished and who was familiar with the
   specifications of the general contract relating to the windows, impliedly,
   although not expressly, agreed to be bound by a provision of the gen-
   eral contract, incorporated by reference in such specifications, giving the
   architect power to make final determination of all questions as to the
   quality and acceptability of materials and the interpretation of the
   specifications.   [431]
On the record of a suit in equity no merit was shown in an exception to
   a refusal by a judge to file a report of material facts in connection with
   an interlocutory decree confirming a master's report and impliedly
   denying a motion to recommit to the master supported by an affidavit
   of counsel.   [433–434]

BILL IN EQUITY, filed in the Superior Court on April 22,
1957.

Following the decision by this court reported in 340 Mass.
276, and recommittal to a master, an interlocutory decree
confirming a supplemental report by the master was en-
tered by *Vallely*, J., and a final decree was entered by
*Paquet*, J.

   *Robert J. Sherer*, for Fenestra Incorporated & another.
   *Warren G. Reed*, for Farm-Rite Implement Company.
   *Joseph Golant*, for Clark.

   CUTTER, J.   This case was before us in *Farm-Rite Imple-
ment Co.* v. *Fenestra Inc.* 340 Mass. 276,[2] in which the basic
facts are fully stated.   After that decision, a judge of the

---

[1] Lester M. Clark and Federal Insurance Company.

[2] The companion case there mentioned has been closed by final decree. In
this opinion, the several participants in the transaction are referred to by the
same designations as in the earlier opinion.

Superior Court recommitted the cases to the master to make ultimate findings on stated issues.

Article III (see 340 Mass. 276, 278) of the main contract for the construction of a control tower at Logan Airport provided that the architect "shall decide all questions . . . as to the . . . quality . . . [and] acceptability . . . of the . . . materials . . . and . . . as to . . . interpretation of the . . . specifications . . . and his determination . . . shall be final." Section 8 of the specifications of the main contract was entitled "Metal Windows." Paragraph 8.01 (a), a part of § 8, directed attention to art. III in a manner more fully stated in 340 Mass. 276, 281.

In a supplementary report the master made the following principal findings. "Farm-Rite expressly agreed to be bound to Clark by the terms of . . . Article III [of the main contract between the Commonwealth and Construction] by virtue of the purchase order of Clark to Farm-Rite, dated September 10, 1954 . . . which contains the words 'all materials to be in accordance with plans and specifications.' Fenestra did not agree to be . . . bound [by art. III] either in writing . . . by . . . two purchase orders of August 19 . . . and September 24 . . . [or] verbally with any representative of Farm-Rite. However . . . specifications were forwarded to . . . Fenestra . . . by letter of . . . Farm-Rite . . . dated June 17, 1954; also by order of September 24, 1954. Fenestra had knowledge of" art. III from having "received the . . . specifications and also it was conceded . . . that it had 'submitted a bid for all the work required under section 8 [of the main contract] both times the job was bid.' . . . Fenestra agreed to be bound by . . . Article III by reference."

With his supplemental report the master filed the purchase orders from Clark to Farm-Rite and from Farm-Rite to Fenestra and also the main contract and specifications. He also included in his report a copy of the letter from Farm-Rite to Fenestra dated June 17, 1954.

Fenestra filed objections to the supplemental report and (see *Cantor* v. *Cantor,* 325 Mass. 719, 721; Rule 46 of the

Superior Court [1954]) a motion to recommit the supplemental report, supported by an affidavit of counsel that the master's summaries of evidence, relating to two disputed findings, were "not fair or accurate ... in ... [certain] particulars." Fenestra also presented a motion to establish the truth of the affidavit. Another judge of the Superior Court, by an interlocutory decree confirming the supplemental report, impliedly denied the motion to recommit. From this interlocutory decree, and from a final decree that Fenestra owed Farm-Rite $11,642.88 with interest and costs, Fenestra appealed. The Superior Court judge declined to file a report of material facts found by him with respect to his interlocutory decree confirming the supplemental report, saying that he "heard this matter upon the report of the master" and that "no testimony was introduced."

1. The master, in summarizing the evidence upon which he relies to justify each finding disputed by Fenestra, has not conveniently set out, in a compact summary relating to that finding alone, the substance of such evidence or specific references to other statements of such evidence in his reports or summaries. In his reports and summaries viewed as a whole, however, there was stated ample evidence to justify each crucial finding. The master did refer, although in general terms, to this evidence in his summaries prepared in connection with Fenestra's objections to his supplemental report. In these summaries, he purported to set out only "new evidence that does not already appear either in ... [his] original report or in the supplementary report."

The most significant finding of the master was that "Fenestra agreed to be bound by the terms of Article III by reference." These last two words we interpret as meaning that, although Fenestra signed no document in terms embodying or incorporating by reference art. III, it did contract with Farm-Rite in the light of the specifications, including by reference art. III, and impliedly incorporated that article by reference in its undertaking.

The purchase orders issued by Farm-Rite to Fenestra were expressed in general terms (see 340 Mass. 276, 277–278). The August 19 order said merely, "Furnish galvanized and painted Steel Windows for the Control Tower — General E. L. Logan Airport . . . . In accordance with verbal quotations . . . Hodges to . . . Smith 6–30–54 $11,564 . . . . Rush drawings for approval. Architects drawings . . . being sent to you today. 'Order placed subject to performance bond which will meet contractor's requirements.' " The bond is dated August 19, 1954, and recites that Fenestra "has entered into a contract with" Farm-Rite, dated August 19, 1954, "for furnishing steel windows for Control Tower . . . Logan Airport, East Boston, Massachusetts. Purchase Order #4549 in accordance with the terms and conditions of said contract, which is hereby referred to and made a part hereof." The order from Farm-Rite to Fenestra dated September 24, covering the same windows, was in essentially the same terms up to and including the statement of the price. The price was altered by the addition of the words "Less 4% on net." This September 24 order also said "All other instructions and specifications remain unchanged."

In the circumstances, the reasonable implication of these purchase orders, as the master, in effect, has inferred, was that the windows were to be in compliance with the requirements of the control tower contract. The windows would be of no use to Clark or Farm-Rite otherwise. This interpretation of the purchase orders finds support in the references to "approval" of drawings, to "[a]rchitects drawings," and to "bond which will meet contractor's requirements."

From the purchase orders and other evidence, the master was justified in finding that Farm-Rite and Fenestra knew that the windows were for use in a State public works project as to which Clark, as a subcontractor, would be bound by the usual public contract procedures and provisions. "Fenestra . . . was an original bidder twice on this same job, and . . . necessarily familiar with all specifications."

The original master's report summarizes an affidavit made on August 17, 1955, by one Bunting, treasurer of Fenestra, that all Fenestra's "operations and applications of . . . bonderite and paint were done in strict and full compliance with Section 8 of the specifications in relation to such Control Tower." This was an admission that, in performing the obligation of the two purchase orders, Fenestra was proceeding under § 8. Section 8 in turn incorporated art. III by reference.

The whole course of the transaction, as revealed in evidence sufficiently summarized in the record (see 340 Mass. 276, 277–279, 281–282), justified an inference that the intention of Clark, Farm-Rite, and Fenestra was that Fenestra in effect would assume and perform all Clark's subcontract obligations. These necessarily included the obligation to abide by art. III, making the architect the arbiter of disputes such as those which arose. The evidence amply justified the master's finding that Fenestra agreed to be bound by art. III. This is not a case of implying in a subcontract a provision of a main contract unrelated to the subcontractor's performance, such as was discussed in *John Soley & Sons, Inc.* v. *Jones,* 208 Mass. 561, 566–567, upon which Fenestra relies in part. Cf. *Boston Plate & Window Glass Co.* v. *John Bowen Co. Inc.* 335 Mass. 697, 700. The provisions of art. III were directly germane to Fenestra's performance under the purchase orders as interpreted.

2. Fenestra contends that certain subsidiary findings were not justified by the evidence and that the master improperly summarized the evidence upon which he relied in making these findings. An affidavit of Fenestra's counsel, filed in support of a motion to recommit the master's reports, does little more than assert that portions of the testimony of two witnesses, Smith and Clark, show that two summaries of evidence were unfair.

Fenestra first contends that the evidence did not justify the finding that plans and specifications were forwarded to Fenestra by Farm-Rite with the latter's letter of June 17, 1954. The letter of June 17 says, "Here are photostatic

copies of the pertinent drawings and sheets of specifications for this job . . . ." From this language the master was entitled to infer that Fenestra was sent all the material which it needed to make the windows. The master in an earlier summary of evidence in connection with objections to his original report (to which Fenestra had filed no objections) had stated, "The windows could not have been made . . . without having . . . [§] 8 of the specifications." Examination of § 8, now before us, shows that this clearly was the case. Even if Smith, part of whose testimony is quoted verbatim in the affidavit of Fenestra's counsel, did not know what documents went with the letter of June 17, the master was justified in inferring from the letter itself that at least all of § 8 went with it, and that, without this much, Fenestra could not have known what it was to make in accordance with the purchase order of August 19, 1954.

The other evidence, which Fenestra contends was not summarized fairly, related to a finding that the entire main contract was sent to Fenestra by Farm-Rite. Fenestra asserts that Clark's testimony, quoted in the affidavit (and also a dated receipt stamp[3] on a copy of the main contract), shows that Farm-Rite did not receive the main contract until September 7, 1954. This was after the purchase order of August 19 but before that of September 24. The master's summary was not unfair in failing to state the date upon which the document was transmitted. Transmission of the document on or shortly after September 7 could reasonably be regarded as seasonably made. Negotiations between Fenestra and Farm-Rite were then still continuing as is shown by the second purchase order of September 24. The master also could reasonably have regarded the date when Farm-Rite sent the main contract to Fenestra as wholly immaterial in view of Fenestra's concession that it

---

[3] The receipt stamp dated September 7, 1954, shows the date of receipt by Crittal & Co. Inc. The record indicates that Crittal was a predecessor or affiliate of Farm-Rite. Receipt of a copy of the main contract by it on September 7 does not exclude the possibility of earlier receipt of another copy by Fenestra at an earlier date, or indicate that Fenestra had not been sent at least § 8 of the specifications with the June 17 letter.

had twice bid on the window work when it was put out for bids. This concession well justified the inference that Fenestra must then have been in possession of, and familiar with, the specifications upon which it was bidding. In any event, if, from the outset, Farm-Rite and Fenestra had been negotiating in the light of the specifications of the main contract, the fact that Farm-Rite first sent it a copy of the main contract about September 7 would not indicate that Farm-Rite was then attempting in some manner (as Fenestra contends was the case) unilaterally to change the terms of the August 19 purchase order. Cf. *New Eng. Mut. Life Ins. Co.* v. *Harvey,* 82 F. Supp. 702, 706 (D. Mass.).

3. Fenestra by bill of exceptions (see *Bolster* v. *Attorney Gen.* 306 Mass. 387, 388–389; *Fields* v. *Paraskis,* 318 Mass. 726, 727) seeks to test whether the judge, who confirmed the master's report, was bound to file a report of material facts found by him. The trial judge stated, in declining to file such a report, that he heard the matter of recommitting or confirming the master's report "upon the report of the master." He had before him only one piece of evidence, the affidavit of Fenestra's counsel. For the purposes of the motion to recommit, this affidavit was evidence. See *Franks* v. *Franks,* 294 Mass. 262, 268; *Minot* v. *Minot,* 319 Mass. 253, 260. Fenestra also brought to the judge's attention the original transcript of the portions of Smith's and Clark's testimony set out in the affidavit. The judge thus could have ascertained that this testimony was accurately reproduced in the affidavit.

We have already indicated that there was basis in the evidence summarized by the master for the finding (that relevant specifications were forwarded to Fenestra by the June 17 letter) to which the part of the affidavit concerning Smith's testimony was directed. Similarly, it has been indicated that the master and the trial judge could have regarded as immaterial to the master's conclusions Clark's testimony quoted in the affidavit. This testimony at most tended to show that Farm-Rite did not receive one particular copy of the main contract until September 7. Com-

plete acceptance of the truth of all that was in the affidavit would not show that the judge committed any abuse of discretion (see *Sherman* v. *Sherman,* 336 Mass. 254, 258–260; *DiMare* v. *Capaldi,* 336 Mass. 497, 501; *M. DeMatteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 263) in failing to recommit the report.

The purpose of the affidavit was to show that specified testimony was before the master. The trial judge was not required to find whether that testimony was true. A report of material facts under G. L. c. 214, § 23, at most could have stated that the judge found that the affidavit correctly stated that testimony. That fact in any event has been made apparent to us in the bill of exceptions which incorporates by reference the quoted testimony. Fenestra's exceptions must be overruled.

4. The architect found that the "paint failure [on the windows] was due to lack of proper bonderization." Article III left that question to the architect. As we said, when the case was here before (340 Mass. 276, 285), "If art. III of the main contract is binding upon Farm-Rite and Fenestra, the architect's determination will be conclusive." The master justifiably has now found that Fenestra is bound by art. III. Consideration of other issues argued by Fenestra thus becomes unnecessary.

5. The interlocutory decree and the final decree are affirmed. Farm-Rite and Clark are to have costs of this appeal. Fenestra's exceptions are overruled.

*So ordered.*