METRO INSULATION CORP. *vs.* ROBERT LEVENTHAL
& others.

Suffolk.    February 13, 1973. — April 12, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Public Works.    Contract,* Building contract.    *Equity Pleading and Practice,* Summary final decree.

In a suit in equity under G. L. c. 149, § 29, by a sub subcontractor doing insulation work on a construction project for a municipal housing authority, where it appeared that the plaintiff, at a conference with the general contractor, the plumbing subcontractor, the authority's architect, the engineer employed by the architect, and the authority, was "informed by all those present that a change order

---

for ... proposed extra insulation work in the amount of ... [the plaintiff's] proposal was forthcoming and that ... [the plaintiff] was to proceed with the work immediately," that the plaintiff then went ahead with the work "in reliance on ... authorization[s] to proceed and ... agreement to pay it additional money," and that it completed the work before receiving notice that the Department of Housing and Urban Development refused to approve the change order, it was held that there was no "dispute" between the general contractor and the authority within an article in the basic contract calling for presentment to the architect for decision of "all disputes ... arising under this Contract ... involving ... extra work," and that the plaintiff was entitled to payment for the work done as an extra. [214-218]

Where a contractor seeking to recover under G. L. c. 149, § 29, extra payments for insulation of sprinkler piping in a municipal housing project asserted in its affidavit in support of a motion for summary final decree under c. 231, § 59, that "it is not the custom ... to insulate sprinkler piping," and the defendants did not take issue with that assertion in their counter affidavit, the judge properly allowed the motion, and the defendants were precluded from raising the question of custom for the first time in this court. [219]

In a suit in equity under G. L. c. 149, § 29, where the final decree correctly ordered the general contractor on a project of a municipal housing authority and the surety on the contractor's bond to pay the plaintiff sub subcontractor for certain extra work, this court ordered the final decree modified by adding thereto a provision that upon such payment the authority reimburse the payer. [219-220]

BILL IN EQUITY filed in the Superior Court on August 14, 1968.

The suit was heard by *Good, J.*

*Robert J. Sherer* (*Judith K. Wyman* with him) for Robert Leventhal & others.

*Peter J. Gagne* (*Sally A. Corwin* with him) for Metro Insulation Corp.

*Brian P. Shillue* for Boston Housing Authority.

GRANT, J.   This proceeding under G. L. c. 149, § 29 (as amended through St. 1964, c. 609, §§ 4 and 5), was originally brought by Metro Insulation Corp. (Metro), a sub subcontractor, against persons doing business as Beacon Construction Company[1] (Beacon), the general con-

---

[1] Robert Leventhal and Norman B. Leventhal.

tractor, and the surety on Beacon's bond[2] to recover for two extras of insulation work performed by Metro[3] in connection with the construction of a federally assisted housing project for the elderly owned by the Boston Housing Authority (Authority). The Authority was brought into the proceeding on Beacon's counterclaim alleging, in effect, that the Authority should be responsible to Beacon for any liability for extras which Metro might succeed in establishing. Frank Sullivan Co. (Sullivan), the plumbing subcontractor and the concern with which Metro had its direct contractual relationships, was not joined as a party.

Metro, following Beacon's responses to Metro's notices to admit facts, moved with supporting affidavit for the entry of a decree in its favor (G. L. c. 149, § 29; G. L. c. 231, § 59). Beacon filed an affidavit in opposition to Metro's motion and (together with the surety) moved, with supporting affidavit, for dismissal of Metro's original bill or, in the alternative, for a decree against the Authority. The Authority filed an affidavit in opposition to so much of Beacon's motion as was directed to it, but no affidavit directly responsive to the matters set out in Metro's affidavit. After hearing the Superior Court allowed Metro's motion, denied Beacon's motion, and entered a final decree ordering Beacon and its surety to pay Metro the total of both extras (see fn. 3, *supra*). Beacon and the surety have appealed from the interlocutory decree denying their motion and from the final decree.

We shall confine our consideration of the case to the specific issues which have been argued in the briefs of the parties. Rule 1:13 of the Supreme Judicial Court, 351 Mass. 738. Rule 1:13 of the Appeals Court. Beacon does not seriously dispute Metro's right to recover for either of the claimed extras, contending instead that the ultimate responsibility should lie with the Authority to pay for all work

---

[2] Great American Insurance Company.

[3] A claim for a contract balance due Metro has been eliminated from the case by stipulation of the parties filed in the Superior Court after the entry of the final decree appealed from.

not required under the basic contract between itself and the Authority. The Authority's main reliance is on the asserted failure of Metro and Beacon to comply with procedural requirements found in the basic contract. As the two claims for extras are unrelated we discuss them separately. The facts recited are taken from Beacon's responses to Metro's notices to admit and from the various affidavits. None of them is disputed.

1. The first claim for extra payment is with respect to Metro's insulation of certain hot water piping in the seventh floor ceiling and of certain cold water piping in the pump and boiler rooms of the building.

At some point in time prior to June 13, 1967, the engineer employed by the Authority's architect inquired of Metro as to the type of insulation it proposed to employ in the upper floors of the building. By its letter of that date to the engineer Metro replied that the specifications of the basic contract did not call for the insulation of such piping[4] and that it had not carried anything for such insulation in the bid which it had submitted to Sullivan, the plumbing subcontractor. By letter of June 30 Sullivan requested Metro to submit a price "for the hot water piping not covered by the specifications." By letter of July 17 Metro submitted separate prices to Sullivan for insulation of hot water piping in the seventh floor ceiling and cold water piping in the pump and boiler rooms. Acting on a request from the Authority, Sullivan instructed Metro to send a breakdown of its quotations "priced in accordance with the contract specifications." Metro did so, and Sullivan in turn sent the revised quotations to Beacon on August 21. On August 22 Beacon wrote Sullivan that the architect had "verbally authorized that this insulation was to be installed and that it was subject to a change order" and concluded by saying that "[i]n the meantime, it appears

---

[4] Division 28.21 o of the specifications *("Pipe Covering and Insulation"),* as amended by Addendum No. 3, called for: "(1) All hot water supply and return piping, branches, risers, and also including cold water piping *throughout the first floor ceiling* shall be insulated with . . .. (3) Insulate all water lines *in first floor ceiling with* . . ." (emphasis supplied).

that we are authorized to proceed with this change." Sullivan, by a letter of August 24, sent a copy of Beacon's letter to Metro.

Following Metro's receipt of the last two letters a conference was had between and among Metro, Sullivan, Beacon, the architect, the engineer and the Authority at which Metro was "informed by all those present that a change order for the proposed extra insulation work in the amount of Metro's proposal was forthcoming and that Metro was to proceed with the work immediately so as not to hold up" the project. Metro thereafter went ahead and completed the work "in reliance on the oral and written authorization to proceed and the agreement to pay it additional money."[5] The Authority, apparently acting under the provisions of art. 10 of the General Conditions of the basic contract,[6] submitted a relevant change order to the Department of Housing and Urban Development (HUD) for its written approval. HUD, for reasons we need not assess, refused to approve the change order for the insulation work. Metro does not appear to have received notice of such disapproval until on or about November 14, 1967, by which time it had completed the work for which it now seeks to recover the price quoted by it. There then followed a flurry of correspondence whereby those concerned either did or did not succeed in complying with the requirements of art. 15[7] of

---

[5] Although no separate document identifiable as a change order has been made part of the record, it may be inferred from several documents which are in the record that a change order was in fact issued and approved by representatives of the Authority, the architect and the engineer.

[6] That article, entitled "Changes in the Work," provides in pertinent part as follows: "a. The Authority may make changes in the work of the Contractor by making alterations therein, or by making additions thereto, or by omitting work therefrom, without invalidating the Contract . . .. c. Except in an emergency endangering life or property, no change shall be made by the Contractor unless he has received a prior written order from the Authority, countersigned by the Architect, and approved on its face by the . . . [Department of Housing and Urban Development] authorizing the change, and no claim for an adjustment of the Contract price or time shall be valid unless so ordered."

[7] That article, entitled "Disputes," provides in pertinent part as follows:"a. All disputes . . . arising under this Contract or its interpretations, whether involving law or fact, or both, or extra work, . . . shall within 10 days of commencement of dispute be presented to the Architect for decision. A copy of the notice of the dispute shall be sent to the Authority and the Regional Office of . . . [HUD]. Such

the General Conditions of the basic contract. We need not decide any question in that regard.

No one contends that the insulation work which forms the basis of this claim was required by the specifications. Beacon suggests, and the Authority argues, that the claim should be barred by the failure of Metro and Sullivan to comply with the notice and other requirements of art. 15 of the General Conditions (fn. 7) following HUD's failure to approve the change order.[8] We do not think there was a "dispute" within the meaning of art. 15; almost as soon as the problem was discovered, and even before HUD approval was sought, it was expressly agreed by the architect and all the parties to this litigation that the insulation requested by the architect was not required by the specifications and should be paid for as an extra.[9] Cf. *Chiappisi* v. *Granger Contracting Co. Inc.* 352 Mass. 174, 176-178; *Beacon Construction Co. of Massachusetts* v. *United States,* 314 F. 2d 501, 504 (Ct. Cl.). If the Authority had requested us to consider the effect of the provisions of art. 10 of the General Conditions (fn. 6), we would have regarded them as waived by the Authority's actions, prior to seeking HUD approval of the change order, in directing the work to proceed and agreeing that it should be paid for. See *Stuart* v. *Cambridge,* 125 Mass. 102, 109-110; *Farm-Rite Implement Co.* v. *Fenestra Inc.* 340 Mass. 276, 286-

notice need not detail the amount of the claim but shall state the facts surrounding the claim in sufficient detail to identify the claim, together with its character and scope. In the meantime the Contractor shall proceed with the work as directed. The parties agree that any claim not presented within this subsection is waived . . .. b. The Contractor shall submit in detail his claim and his proof thereof. The decision of the Architect shall be approved in writing by . . . [HUD] and the Authority prior to its issuance. Any decision not so approved shall be a nullity. . . . d. . . . The Architect's decision shall not be final and conclusive but the dispute shall be tried in court on its merits. . . ."

[8] Metro agreed with Sullivan to "[f]urnish & install the necessary insulation as per the requirements of the Contract Plans & Specification . . .." For purposes of this opinion we assume without deciding that Metro agreed to be bound by the General Conditions of the basic contract. See, on this point, *John Soley & Sons, Inc.* v. *Jones,* 208 Mass. 561, 566-567; *Farm-Rite Implement Co.* v. *Fenestra Inc.* 340 Mass. 276, 281, 283; *S. C.* 342 Mass. 427, 428-431, 434; *Chiappisi* v. *Granger Contracting Co. Inc.* 352 Mass. 174, 175.

[9] The Authority does not argue that it cannot be held liable for an extra unless HUD participates therein. See *Alpert* v. *Commonwealth,* 357 Mass. 306, 331-332.

287; *M. L. Shalloo, Inc.* v. *Ricciardi & Sons Construction, Inc.* 348 Mass. 682, 685-686; *J. P. Smith Co. Inc.* v. *Wexler Construction Co. Inc.* 353 Mass. 551, 554-555; *Ferber Co.* v. *Ondrick,* 310 F. 2d 462, 465 (1st Cir.); *Wexler Construction Co. Inc.* v. *Housing Authority of Norwich,* 144 Conn. 187, 192-193.

2. The second claim for extra payment is with respect to Metro's insulation of certain sprinkler piping in the first floor ceiling of the building. The Authority's objection to payment of this claim is that the work in question was already required under Division 28.21 o of the specifications (fn. 4)[10] in the basic contract between itself and Beacon. The specifications, read by themselves, are silent on the point. Metro, apparently in anticipation of the Authority's objection, asserted (in the affidavit filed in support of its motion for a decree) that "[i]t is not the custom in the insulation trade to insulate sprinkler piping unless that insulation is clearly specified" (see *Fred C. McClean Heating Supplies, Inc.* v. *Jefferson Construction Co.* 339 Mass. 356, 369) and pointed in particular to a contract drawing which clearly distinguished between the water piping and the sprinkler piping to be installed in the first floor ceiling. A copy of Metro's affidavit was attached to Beacon's motion (in the alternative) for a decree against the Authority. Nothing in the Authority's affidavit took issue with the factual assertions in Metro's affidavit concerning a custom in the insulation trade. That being so, the Authority is in no position to urge before us, for the first time, that it was entitled to a trial on the merits in order to determine if any custom existed. *Doral Country Club, Inc.* v. *O'Connor,* 355 Mass. 27, 30. There was no error in summarily deciding that possible question.

3. The Authority is ultimately responsible for payment of both of Metro's claims for extras. The final decree (as already modified by stipulation) is to be further modified by including therein a provision to the effect that the

[10] Or, possibly, under Division 28.40 ("SPRINKLER SYSTEM").

Authority shall reimburse Beacon (or its surety) upon its payment of those claims to Metro and, as so modified, is affirmed. Metro and Beacon are to have costs of appeal against the Authority.

*So ordered.*