[Civ. No. 25889.   Second Dist., Div. Four.   July 31, 1962.]

PHILLIP BAILEY, Plaintiff and Respondent, v. SAUL J. BREETWOR et al., Defendants and Appellants.

COLICH CONSTRUCTION COMPANY et al., Plaintiffs and Respondents, v. SAUL J. BREETWOR et al., Defendants and Appellants.

(Consolidated Cases.)

Fadem & Graves, Jerrold A. Fadem, Ernest L. Graves and Harmon R. Ballin for Defendants and Appellants.

Cadoo & Tretheway and John C. Moore for Plaintiff and Respondent Bailey.

No appearance for Plaintiffs and Respondents Colich Construction Co.

BURKE, P. J.—Two separate actions to foreclose mechanics' liens against the same parcel of real property and the same defendants were consolidated for trial. The case was tried without a jury and judgment was entered in favor of plaintiff Colich Construction Company ("Colich") in the amount of $3,213 and in favor of plaintiff Phillip Bailey doing business as Bailey Construction Co. ("Bailey") in the sum of $3,818. Defendants, owners of the property, Saul J. Breetwor and Beverly Breetwor ("Breetwor"), appeal from the judgment.

Viewed most favorably to the plaintiffs, the following is a summary of material facts. Breetwor entered into a contract with Colich to grade and compact Breetwor's building site as per plan, including compacting available fill material to the approximate profile shown on the grading plan for a contract price of $2,600. The contract included the securing of a report by an engineering firm acceptable to the City of Inglewood ("City") Building Department "that all work has been done to City specifications." Colich subcontracted the grading and compacting work to Bailey, with Bailey agreeing to perform the work in accordance with the provisions of the Colich-Breetwor contract and with Colich reserving to itself the installation of certain drainage structures.

There had been a natural drain running across the property at its lowest point, and upon commencing the work and scraping the surface of this area Bailey uncovered an extensive amount of wet clay. This was called to the attention of the company engaged by Bailey to report to the City of Inglewood and Bailey was advised that all of this wet clay material would have to be removed in order to permit proper compaction of the soil in accordance with City requirements. Bailey notified Breetwor of the condition, the necessity for its correction and that such work was not included in his subcontract with Colich; further, that if the work was to be done it would have to be paid for as an extra. When Breetwor inquired as to the cost of doing the extra work Bailey advised him that it was not possible to give him an estimate without knowing the extent of the underlying wet clay strata and suggested that Breetwor contract with an engineering company to conduct soil tests to determine the extent of the condition. Breetwor insisted that the compaction of the muddy soil was within the terms of his contract with Colich. Bailey advised him that unless Breetwor agreed to pay for the work as an extra he would stop work on the contract. Breetwor urged him not to stop work because he had plans to construct an apartment building on the site and did not want the job delayed. Bailey offered to do the extra work on a cost plus 10 per cent to cover overhead basis. Breetwor told him, "Until I get this straightened out with Colich Construction Co. I will authorize you to go ahead and I will assume responsibility for the costs." Breetwor's version of this conversation was more favorable to himself but that con-

flict in the testimony must be resolved on appeal in favor of the prevailing parties.

Bailey proceeded with the special work and segregated the cost of doing it from the work which he originally subcontracted to do for Colich. Upon the completion of the entire project he billed Breetwor direct for the extra work which amounted to $3,213, and billed Colich for the work done under the Bailey-Colich contract. Upon refusal of Breetwor to pay for the work done, Colich filed a mechanic's lien and followed it with a complaint to foreclose the lien. Breetwor answered and counterclaimed, alleging in part that the Colich-Breetwor contract required Colich to hold Breetwor free and harmless from liens, which was violated by Colich refusing and failing to discharge the Bailey lien. Bailey in turn filed a lien and a complaint to foreclose it, to which Breetwor answered and cross-complained, alleging that Bailey's work was done pursuant to the Colich-Breetwor contract; that there existed no contractual relationship between Bailey and Breetwor; that the alleged oral agreement sued upon was without any consideration whatever. Breetwor cross-complained against Colich demanding that the latter pay Bailey. The consolidated actions resulted in judgment for the plaintiffs. Breetwor moved for a new trial based upon newly discovered evidence, which was denied.

On appeal defendants contend that the Colich-Breetwor contract required Colich to compact the wet clay which was uncovered in the doing of the work; that Bailey obligated himself under the Colich-Bailey subcontract to do the same thing that Colich had agreed to do and that since any promise that Breetwor would have made to Bailey would have already covered under a preexisting contract, such promise was not enforceable against Breetwor for lack of consideration.

In referring to the compaction to be engaged in under the contract, the Colich-Breetwor contract included the phrase, "No import or haul-away included." The trial court permitted the testimony of expert witnesses in order to be enlightened as to the meaning of this phrase. It also permitted expert testimony on the meaning of the words "grading," "compaction," "fill," and by the phrase "compacting available fill to the profile shown on the grading plan." Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate unless clearly used in a different sense. (Civ. Code, § 1645.)

"Where any doubt exists as to the purport of the

parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution—including the object, nature and subject matter of the agreement [citing case]—as well as to subsequent acts or declarations of the parties 'shedding light upon the question of their mutual intention at the time of contracting.' [Citing case.]'' (*Barham* v. *Barham,* 33 Cal.2d 416, 423 [202 P.2d 289].)

There was no error in permitting expert testimony as to the proper interpretation of technical words used in these construction contracts. From the testimony it was apparent that a considerable amount of loose fill material had been dumped from the street over an embankment onto the subject property, which material was readily visible to anyone inspecting the property, and there could be no doubt but that the contractor was responsible under the contract to work over this particular material in order to compact it in such a manner as would form a firm base for the construction of the contemplated apartment house building. However, the wet clay condition was not readily apparent from the surface and was exposed only after the work of grading had commenced. While the contract contemplated that certain soil would be removed from the high ground and compacted on the lower level, there was nothing in the contract which required an excavation at the lower level below the natural contour of the ground in order to remove an underlying wet clay condition, and it was this condition which the plaintiffs asserted was beyond the work contemplated in the original contract or subcontract. Once this condition was noted there was no obligation on the part of the contractor or subcontractor to proceed.

The authorization given by Breetwor to Bailey to proceed to do the work on a cost plus basis constituted, in the eyes of the trial court, a special verbal contract establishing a contractual relationship between Breetwor and Bailey directly upon which the latter was entitled to recover. The evidence showed that Breetwor remained in constant attendance as the work progressed and was advised by Bailey from time to time as to the costs being incurred. Having authorized the work to proceed, it was up to Breetwor to terminate this arrangement as and when he saw fit. He could not, however, wait until the completion of the work to repudiate his oral contract with Bailey.

The rule is established in California that a promise

of extra compensation for completion of a contract to a promisee who has at the time a preexisting legal duty to perform the contract is without consideration. (*Western Lithograph Co.* v. *Vanomar Producers,* 185 Cal. 366 [197 P. 103].) ▮ Also a promise by one to fulfill his own contract with another is no consideration for a promise by a third party. (*Ellison* v. *Jackson Water Co.,* 12 Cal. 542; *Tipton* v. *Tipton,* 133 Cal.App. 500 [24 P.2d 525].)

▮ However, if the duty of performance under the subsequent contract is different from the duty owed under the prior contract, then the promisor is not promising to perform a preexisting legal duty. His promise imposes upon him a new detriment and confers upon the promisee a new benefit and is sufficient consideration for the promise of another to pay for his costs. (Civ. Code, § 1605.)

▮ In the instant case the duty of performance owed by Bailey under the original subcontract, which incorporated the terms of the contract between Colich and Breetwor, was to grade and compact Breetwor's building site according to certain plans and specifications, ''import or haul-away excluded.'' Under the subsequent contract with Breetwor, Bailey's duty of performance included correcting the wet clay condition requiring excavation below the natural contour line of the ground and importation of additional fill material. This performance was clearly beyond the scope of the original contract. Bailey thus incurred a new detriment and Breetwor received a new benefit constituting sufficient consideration for Breetwor's promise to cover Bailey's costs. (Civ. Code, § 1605; also see Rest., Contracts, § 84, subd. c.)

Judgment for plaintiffs affirmed.

Jefferson, J., and Balthis, J., concurred.

A petition for a rehearing was denied August 21, 1962, and appellants' petition for a hearing by the Supreme Court was denied September 26, 1962.