BRIAN CONSTRUCTION AND DEVELOPMENT COMPANY, INC. *v.* JOHN BRIGHENTI

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and SIDOR, Js.

Argued May 12—decision released September 19, 1978

*Edwin M. Lavitt,* with whom were *John H. Yeomans* and, on the brief, *Jonathan J. Kaplan* and *Timothy W. McNally* for the appellant (plaintiff).

*John V. Zisk,* for the appellee (defendant).

LOISELLE, J. The plaintiff, a contractor, brought this action for damages against the defendant, a subcontractor, alleging that the defendant had breached a contract under which he had promised

to perform certain excavation work for the plaintiff. The defendant counterclaimed. The court rendered judgment for the defendant on the plaintiff's claim and for the plaintiff on the defendant's counterclaim. From the judgment for the defendant, the plaintiff has appealed.

The relevant facts as found by the court are as follows: In early 1968, Joseph E. Bennett, doing business as Joseph E. Bennett Company, entered into a contract with Seymour B. Levine (hereinafter the owner) for the construction of a post office building in Bristol. Shortly thereafter, Bennett assigned the contract to the plaintiff, who, on October 10, 1968, entered into a written subcontract with the defendant. Pursuant to that contract, consisting of a standard subcontract agreement plus specifications, the defendant agreed to perform "all Excavation, Grading, Site Work, Asphalt Pavement, Landscaping, and Concrete Work" and "everything requisite and necessary to finish the entire work properly." In return, the defendant was to receive $104,326.

The defendant commenced excavation of the premises on October 15, 1968, at which time he discovered considerable debris below the surface, consisting in part of concrete foundation walls, slab floors, underground tanks, twisted metals and various combustible materials. Apparently, the discovered walls and floor had been part of the basement of an old factory which had previously been located on the site. The plaintiff had previously taken test borings of the excavation site, the results of which had been given to the defendant prior to the execution of the subcontract. The defendant had relied upon those results, although they proved

to be grossly inaccurate. Neither party had been aware of the rubble and, consequently, its removal was not specifically called for by the plans and specifications included in the subcontract, nor was the cost of its removal included in the contract price. Nonetheless, the existence of the rubble necessitated excavation beyond the depth anticipated in the plans and specifications and the post office building could not be constructed without its removal.

A provision of the general contract between the owner and Bennett provided that "no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change." A separate provision of the contract specified that each subcontractor was to make all claims for extras "to the Contractor in the manner provided in the General Conditions of the Contract . . . for like claims by the Contractor upon the Owner." A provision of the subcontract reiterated this requirement, adding that "no extra work or other change will be commenced by the Sub-Contractor without the Contractor's prior approval in writing." Similarly, both contracts included provisions under which the subcontractor agreed to be bound to the contractor by the terms of the general contract and to assume toward the contractor all those obligations which he, under the contract, assumed towards the owner.

Upon discovery of the unanticipated debris, the plaintiff notified the architect, the attorney for the owner, representatives of the Bristol redevelopment agency, which owned the building site, and representatives of the postal service of the existence

of the rubble.[1] All agreed that removal of the rubble was requisite for completion of the building, yet none would issue written authorization for its removal.

On October 21, 1968, the defendant ceased working on the excavation site and notified the plaintiff of his refusal to continue. Subsequently, the defendant offered to complete the subcontract if the plaintiff would have the unsuitable material removed. The plaintiff refused this offer. He then ordered the defendant to remove the rubble as part of "everything requisite and necessary" under the subcontract. The defendant refused. When the plaintiff was confronted with this situation, and no one would take the responsibility to authorize the removal of the rubble, although its removal was necessary for the contractor to complete his contract, he chose to enter into a further agreement with the defendant for work not included in the subcontract. The plaintiff and the defendant orally agreed that the defendant would be paid his costs for removing the unanticipated rubble, plus 10 percent. By letter dated November 7, 1968, the plaintiff confirmed this oral agreement. Although requested in the letter to do so, the defendant failed to sign and return a copy of the letter to the plaintiff. Nonetheless, the defendant returned to work, continuing until about November 13, 1968, at which point he left the job, refusing to return despite the plaintiff's request that he complete the work. The plaintiff completed his own contract with the owner, suffering, as a result of the defendant's abandonment, considerable damages.

[1] The plaintiff sought to notify the owner, but because the owner was ill, the plaintiff was unable to reach him.

On appeal to this court, most of the plaintiff's claims of error focus upon the court's conclusion that, by interpreting the terms of the general contract as being incorporated into the subcontract, the issuance of a written extra work order signed by the architect was a condition precedent to the defendant's obligation to remove the rubble. The plaintiff's final claim, however, raises the issue of whether the oral agreement between it and the defendant constituted a valid agreement obligating the defendant to remove the unexpected rubble. Because we find this issue to be dispositive of the appeal, the other claims need not be specifically addressed.

It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract. See, e.g., *Dahl* v. *Edwin Moss & Son, Inc.*, 136 Conn. 147, 69 A.2d 562; *Gruber* v. *Klein*, 102 Conn. 34, 127 A. 907; *Warren* v. *Skinner*, 20 Conn. 559. "The basis of the rule is generally made to rest upon the proposition that in such a situation he who promises the additional compensation receives nothing more than that to which he is already entitled and he to whom the promise is made gives nothing that he was not already under legal obligation to give. 1 Williston on Contracts, § 130." *Blakeslee* v. *Board of Water Commissioners*, 106 Conn. 642, 652, 139 A. 106. Where, however, the subsequent agreement imposes upon the one seeking greater compensation an additional obligation or burden not previously assumed, the agreement, supported by consideration, is valid and binding upon the parties. See, e.g., *Simone* v. *Kirschner*, 100 Conn. 427, 124 A. 20.

In *Blakeslee* v. *Board of Water Commissioners,* supra, 656, this court, in analyzing these traditional principles, articulated the evolving rule that " 'where a contract must be performed under burdensome conditions not anticipated, and not within the contemplation of the parties at the time when the contract was made, and the promisee measures up to the right standard of honesty and fair dealing, and agrees, in view of the changed conditions, to pay what is then reasonable, just, and fair, such new contract is not without consideration within the meaning of that term, either in law or in equity.' *United Steel Co.* v. *Casey,* 262 Fed. 889, 893; see also *Linz* v. *Shuck,* 106 Md. 220, 67 Atl. 286." See also *Sasso* v. *K.G. & G. Realty & Construction Co.,* 98 Conn. 571, 120 A. 158; *Connelly* v. *Devoe,* 37 Conn. 570, 576.

This principle has received recognition by courts of other jurisdictions confronted with situations comparable to that now before this court. In *Evergreen Amusement Corporation* v. *Milstead,* 206 Md. 610, 112 A.2d 901, the Maryland Court of Appeals found a subsequent oral agreement of the parties to a written construction contract valid, relying, in part, upon the theory of unforeseen circumstances. In that case, the plaintiff, operator of a drive-in movie theater, had entered into a written contract with the defendant, a contractor, pursuant to which the latter agreed to supply all the necessary materials and to perform the work needed to clear the theater site of timber, stumps, and waste material, and to grade the site as indicated on the accompanying plans. Once the work was underway, it became apparent that substantial, additional fill would be needed to complete the project, although neither party had anticipated this, both relying upon a topo-

graphical map which proved to be of doubtful accuracy. The court found that the parties, upon this discovery, entered into an oral agreement whereby the defendant would bring in the fill for additional compensation. On appeal, the plaintiff claimed that this agreement lacked consideration since the defendant promised only to do that which he had already agreed to do, i.e., to furnish all materials needed to grade the theater site. Relying upon the theory of unforseen circumstances, the court held the agreement to be binding.

In another case involving facts similar to those now before us, a California Court of Appeal in *Bailey* v. *Breetwor*, 206 Cal. App. 2d 287, 23 Cal. Rptr. 740, without reference to the theory of unforeseen circumstances, determined that a subsequent oral agreement of parties to a written contract was valid where unanticipated, burdensome conditions, not contemplated by the parties at the time the written contract was executed, were encountered. In that case, the defendant owner had entered into a written contract with a construction company to grade and compact a building site for $2600. The work was subcontracted to the plaintiff, who agreed to perform the work in accordance with the general contract. Upon commencing his work, the plaintiff discovered, below the surface, an extensive amount of wet clay. The owner was notified of this and was advised that, although removal of this clay was not included in the subcontract, its removal was necessary for compliance with the city building code. In return for costs plus 10 percent, the plaintiff orally agreed to remove the clay. Determining that the oral agreement constituted a separate, binding contract, the court noted that "[t]his performance was clearly beyond the scope of the original con-

tract. Bailey [the plaintiff] thus incurred a new detriment and Breetwor [the owner] received a new benefit constituting sufficient consideration for Breetwor's promise." Id., 292.

Although the technical terminology apparent in these two cases differs, the underlying reasoning is similar. In each case, an unforeseen, burdensome condition was discovered during the performance of the original contract. The promise of additional compensation in return for the promise that the additional work required would be undertaken was held to constitute a separate, valid agreement. Such reasoning is applicable to the facts of this case. The unchallenged findings of the court reveal that the substantial rubble found beneath the surface of the site was not anticipated by either party, that its presence necessitated excavation beyond the depths required in the plans and specifications, that the cost of removing this rubble was not included in the contract price and that the parties entered into a separate oral agreement for the removal of the rubble. Under these circumstances, the subsequent oral agreement, that the defendant would remove this rubble in return for additional compensation, was binding as a new, distinct contract, supported by valid consideration. See Restatement (Second) Contracts § 89D (Tentative Draft No. 2, 1965). The defendant's failure to comply with this agreement constitutes a breach of contract.

Because of our disposition of this issue, we need not address the question of whether the subcontract incorporated the provision of the contract requiring written authorization by the architect or owner for extra work. Such a provision does not preclude a subsequent agreement pursuant to which an obliga-

tion, not contemplated at the time the original contract was executed, is assumed. *Wyandotte & D.R. Ry.* v. *King Bridge Co.*, 100 F. 197, 205 (6th Cir.); see also *Farm-Rite Implement Co.* v. *Fenestra, Inc.*, 340 Mass. 276, 287, 163 N.E.2d 285. The court found that the plaintiff and the defendant entered into an agreement pertaining to the costs for removal of the rubble. Such an agreement is valid. See, e.g., *Wagner* v. *Graziano Construction Co.*, 390 Pa. 445, 447, 136 A.2d 82.

There is error, the judgment for the defendant on the complaint is set aside and the case is remanded with direction to render judgment for the plaintiff to recover such damages as he may prove on a new trial limited to the issue of damages.

In this opinion the other judges concurred.