## GUILFORD YACHT CLUB ASSOCIATION, INC.

v.

## NORTHEAST DREDGING, INC.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1981.
Decided Dec. 21, 1981.

Shaines, Madrigan & McEachern, Professional Ass'n, Sanford Roberts (orally), Portsmouth, N. H., for plaintiff.

Verrill & Dana, Robert Moore, Andrew M. Horton (orally), Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

ROBERTS, Justice.

Following trial in the Superior Court, Cumberland County, judgment was entered on a jury verdict awarding Guilford Yacht Club Association, Inc. (Guilford) damages of $14,800 while also awarding Northeast Dredging, Inc. (Northeast) damages on its counterclaim of $68,414.[1]  The Superior Court denied Guilford's motion for a new trial.  Guilford appeals, alleging that the jury verdict is fatally inconsistent and that

---

1. The proper form of judgment is a single judgment in favor of Northeast for $53,614, *i.e.*, the difference between the two verdicts ($68,414 − 14,800 = $53,614).  *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 58.3 (2d ed. 1970).

the jury was not properly instructed.[2] We modify the judgment below (see note 1, supra), and as modified affirm.

Guilford is situated on coastal property in Connecticut. On March 29, 1976, Guilford and Northeast signed a contract providing that Northeast would dredge a channel five feet deep and fifty feet wide commencing at Guilford's yacht basin into Guilford Harbor, thereby gaining access to Long Island Sound. Northeast also agreed to dredge and expand the existing yacht basin.

In consideration for the work to be performed by Northeast Guilford agreed to pay $90,000. The contract stated:

> It is estimated that to perform the dredging portion of this agreement, contractor will have to move approximately . . . (18,000) cubic yards. [Guilford] does not, in any way, warrant or guarantee that the actual amount of material necessary to accomplish its intended purpose will be less than or exceed said . . . (18,000) cubic yards. However, it is agreed between the parties that as a guide to the determination of the amount of weekly payments . . . the sum of . . . ($78,000.00) . . . shall be applicable . . . to "dredging" and $4.33 for each cubic yard ($78,000.00 divided by 18,000 cubic yards) shall be used as a guide in determining the amount of [weekly payments].

The contract also provided that time is of the essence, and failure to complete on time would result in liquidated damages of $10,000 plus $20 per day until the work was completed.

Northeast's dredge arrived at the work site on March 23, 1976, and soundings of the channel were begun. Robert Plummer, owner of Northeast, testified that on March 29 he did not know how much material would have to be moved to complete the project; he testified that he relied upon Guilford's information that it would be approximately 18,000 cubic yards. Plummer admitted, however, that before he signed the contract for Northeast "it appeared that it looked [as though the 18,000 figure was inaccurate]." Since soundings of the channel were not completed until mid-April 1976, Plummer had not then computed the actual yardage to be moved.

Plummer further testified that in mid-April the Commodore of Guilford Yacht Club asked him to do some additional dredging in the yacht basin, work not contemplated in the March 29 contract. Plummer replied that there appeared to be quite a lot of extra yardage involved in the original project (that is, yardage above 18,000 cubic yards), and that Plummer wanted to be paid for the extra yardage. Guilford then offered to pay Northeast both for the extra yardage involved in the original project and for the additional yacht basin work not contemplated in the March 29 contract. The Vice-Commodore of Guilford promised Plummer that Guilford would pay for both. Northeast performed the additional yacht basin work.

Dredging the channel required that the parties obtain certain government permits. Northeast and Guilford eventually agreed to a completion date of June 30, 1976. Plummer testified that Northeast hit ledge while dredging the channel, slowing its progress. On June 29 Northeast struck ledge that Plummer testified could not be detoured around. On June 30 the government permits expired, and Northeast quit about 1000 feet short of completion. Guilford hired a different dredger in 1978 to complete the channel.

Plummer testified that Northeast removed 15,800 cubic yards of material in addition to the 18,000 cubic yards estimated in the contract for which Northeast claimed to be owed payment. Plummer stated that a fair value for this work would be $4.33 per cubic yard, and therefore the value of the additional dredging performed by Northeast was $68,414.

Prior to trial the parties stipulated that Connecticut law would apply. Each party successfully moved for orders in limine to prevent the introduction at trial of evidence of estimates made by the opposing party prior to March 29, 1976 of the amount of

---

**2.** Northeast filed a cross-appeal, but has raised no additional issues.

yardage that would need to be removed. The trial court refused to give the jury Guilford's requested instruction on workmanlike performance.

## I. *Inconsistent Verdicts*

Following the return of the jury verdicts for Guilford in the amount of $14,800 and for Northeast in the amount of $68,414, Guilford properly first challenged the damage awards by moving in Superior Court for a new trial. *See Cannan v. Bob Chambers Ford*, Me., 432 A.2d 387, 389 (1981). On appeal Guilford contends that by returning a verdict for Guilford under the liquidated damages clause of the contract [3] the jury must have found that Northeast breached its contract by not completing the channel. Guilford argues that under no legal theory consistent with the evidence in this case can the verdict of $68,414 for Northeast be consistent with that finding. Therefore, Guilford concludes, we should vacate the jury's awards as they must have been "reached under a mistake of law or in disregard of the facts." *S. H. Nevers Corp. v. Husky Hydraulics, Inc.*, Me., 408 A.2d 676, 681 (1979).

██ A new trial may be required when a jury returns two verdicts entirely inconsistent with each other, though standing alone each verdict would be supported by sufficient evidence. *Stevens v. Walker*, 99 Me. 43, 58 A. 53 (1904); *see Illinois Central Gulf Railroad Co. v. Parks*, 390 N.E.2d 1073 (Ind.App.1979); *Milliken v. Smith*, 218 Tenn. 665, 405 S.W.2d 475 (1966). We apply, however, "the principle that all rational intendments are to be taken in support of

the jury verdict." *Cope v. Sevigny*, Me., 289 A.2d 682, 685 (1972). Our duty is to consider the evidence in the light most favorable to the jury's verdicts and determine whether the verdicts are without rational explanation. *See id.* at 684; *Milliken*, 405 S.W.2d at 477–78.

██ The jury was correctly instructed under Connecticut law that a promise by Guilford to pay additional compensation to Northeast for work Northeast was already required to do under the written contract could be enforcible by Northeast if: (1) the conditions giving rise to the promise of additional consideration were not anticipated by the parties at the time of the original contract; and (2) those conditions made performance of the original contract unusually difficult. *See Dahl v. Edwin Moss and Son, Inc.*, 136 Conn. 147, 69 A.2d 562 (1949); *Blakeslee v. Board of Water Commissioners of City of Hartford*, 106 Conn. 642, 139 A. 106 (1927); *see also Brian Construction and Development Co., Inc. v. Brighenti*, 176 Conn. 162, 405 A.2d 72 (1978). The jury rationally could find that in mid-April 1976 Guilford agreed to additionally compensate Northeast for dredging in excess of 18,000 cubic yards. The jury could also find that Northeast's soundings were completed in mid-April (though final calculations were not completed until the end of April), and that both parties in mid-April first became aware that "a lot of" additional dredging would be necessary to complete the project (the total actually dredged by Northeast could be found to be in excess of 38,000 cubic yards, more than double the amount estimated in the contract).[4] Final-

---

3. The jury was instructed that if they should find damages for Guilford, they were to calculate those damages in accordance with the liquidated damages clause of the contract.

Neither party on appeal challenges this instruction or the award based thereon. Therefore, we do not consider the propriety of either. *See generally* Annot., 42 A.L.R.2d 1134 (1955).

4. Plummer testified that at the time he signed the written contract he suspected that the 18,000 cubic yard figure might be inaccurate, but that he believed that that figure was approximately correct. The jury could find that Northeast did foresee minor differences between the

18,000 contract figure and the actual amount that would have to be dredged pursuant to the contract, but that neither party foresaw on March 29, 1976 that the actual amount to be dredged would be more than double the estimated figure of 18,000 cubic yards. *Cf. Pittsburgh Testing Laboratory v. Farnsworth & Chambers Co.*, 251 F.2d 77 (10th Cir. 1958) (actual time required to complete contract was twice as long as contract estimate). Evidence supports a finding that Northeast removed over 38,000 cubic yards. While part of that can be attributed to the additional yacht basin work which Northeast agreed to perform in mid-

ly, the jury could rationally find that this unforeseen circumstance made performance of the contract unusually difficult. Thus, Guilford's promise of additional compensation could be found to be enforcible by Northeast [5] while at the same time the jury could find that Northeast was in breach of the written contract due for its failure to complete the channel (thereby entitling Guilford to damages).[6]

## II. *Jury Instructions*

Guilford objected to the trial court's failure to give the following requested instruction:

### WORKMANLIKE PERFORMANCE

The law recognizes that when an individual or a company undertakes to perform a service which requires a particular skill or expertise, in this case dredging, they must exercise that degree of care which a dredger of ordinary skill and prudence would have exercised under the same or similar circumstance. The other party has a right to rely upon the skill and expertise of the dredger, and that he knows when he undertakes the project what must be done in order to fulfill his obligations under the contract.

■ A party is not entitled to have his requested instructions given to the jury if they are not supported by the facts of the case. *Michaud v. Steckino*, Me., 390 A.2d 524, 534 (1978). No issue of workmanlike performance is raised on the record before us. Moreover, in light of the verdict awarding damages to Guilford, the jury must have found that Northeast did breach its contract with Guilford. Thus, even assuming that an issue of workmanlike performance was raised, and further assuming that the requested instruction accurately states the law, Guilford suffered no prejudice from the trial court's refusal to give

April (evidence supports a finding that such work amounted to significantly less than 10,000 cubic yards), it must be noted that Northeast did not dredge the final 1000 feet of channel called for by the written contract. Full performance would have resulted in a total that included this additional dredging.

5. Guilford contends that no express contract could have been formed in mid-April because there was no evidence of an express promise to pay compensation at any specific rate. A contract will be sustained if the meaning of the parties can be ascertained from the express terms or by fair implication. *Spicer v. Hincks*, 113 Conn. 366, 370, 155 A. 508, 510 (1931). " '[E]ven though an agreement may be too indefinite in its terms to be specifically enforced, it may be certain enough to constitute a valid contract for breach of which damages may be recovered.' " *Augeri v. C. F. Wooding Co.*, 173 Conn. 426, 429, 378 A.2d 538, 540 (1978) *quoting Gulbenkian v. Gulbenkian*, 147 F.2d 173, 175 (2d Cir. 1945). In view of the written contract provision that $4.33 per cubic yard would be used as a guide for making payments and in view of Plummer's testimony that $4.33 per cubic yard is a fair value, the jury could have rationally inferred that the parties intended that rate of compensation to apply. In any event, the oral contract in question is certain enough to allow damages to be computed. *See generally* J. Murray, *Murray on Contracts* § 27 (1974).

6. The jury's verdicts can be upheld upon a second theory. The jury was also instructed that a promise by Guilford of additional compensation to Northeast could be enforcible against Guilford if Guilford's promise was in exchange for Northeast's promise to do work in addition to the work it was required to do under the terms of the written contract. *See Brian Construction and Development Co., Inc. v. Brighenti*, 176 Conn. 162, 164–166, 405 A.2d 72, 74–75 (1978) ("It is an accepted principle of law in this state that when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract.... Where, however, the subsequent agreement imposes upon the one seeking greater compensation an additional obligation or burden not previously assumed, the agreement, supported by consideration, is valid and binding upon the parties."). The jury could rationally find that in mid-April 1976 Guilford agreed to additionally compensate Northeast for dredging in excess of 18,000 cubic yards in return for Northeast's promise to perform work in the yacht club basin not within the scope of Northeast's obligations under the written contract. This additional work was performed. Thus Northeast assumed an additional obligation in mid-April, and Guilford could properly be bound to pay Northeast for its excess dredging. *See id.*; 1A A. Corbin, *Corbin on Contracts* § 192 (1963).

the instruction, and any error would be harmless.[7]

The entry is:

Judgment modified to provide that Northeast Dredging, Inc. recover of Guilford Yacht Club Association, Inc. damages in the amount of $53,614. As modified, judgment affirmed.

All concurring.

---

7. On appeal, Guilford argues that the proposed instruction was in fact intended to inform the jury that at the time of the making of the written contract Northeast bore the risk of loss in case performance of the contract should require the removal of over 18,000 cubic yards of material. There is no indication in the record that such an argument was made to the trial judge. To the contrary, the proposed instruction was characterized at trial by Guilford's counsel as dealing with "workmanlike manner;" the submitted written proposed instruction was entitled "WORKMANLIKE PERFORMANCE;" and the listed supporting authorities accompanying the written proposed instruction discuss the duty to exercise that degree of care which a skilled workman of ordinary prudence would exercise in similar circumstances. See Sasso v. Ayotte, 155 Conn. 525, 235 A.2d 636 (1967); 17 Am.Jur.2d, Contracts § 371 (1964). Under these circumstances the trial judge acted properly in rejecting the proposed instruction for the reason given in text. We treat this argument, raised for the first time on appeal, as waived. The presiding justice below did not instruct the jury on allocation of the risk of loss, and Guilford did not object to the absence of an instruction concerning that issue. See Minott v. F. W. Cunningham & Sons, Me., 413 A.2d 1325, 1332 (1980).