Filed 9/12/13  Caldwell v. Regents CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAMES E. CALDWELL, JR., et al., | B243567 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. SC116946) |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa Hart Cole, Judge.  Affirmed.

Reed Smith, Paul D. Fogel, Dennis Peter Maio; Manatt, Phelps & Phillips, Craig J. de Recat and David T. Moran for Defendant and Appellant.

Law Offices of John R. Walton, John R. Walton and Walter W. Moore for Plaintiffs and Respondents.

\* \* \* \* \* \*

Pursuant to a motion brought by plaintiffs and respondents James E. Caldwell, Jr., and Hannah C. Sowerwine, individually and as trustees of the Hannah Locke Carter Trust, and Anne Caldwell and Jonathan A. Caldwell, individually (the Caldwells), the trial court issued a preliminary injunction that prevented defendant and appellant The Regents of the University of California from selling a Japanese garden it had agreed to retain in perpetuity.

We affirm. The trial court acted within its discretion in determining the Caldwells presented a reasonable probability of prevailing on the merits on their breach of contract and related claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Hannah Carter Japanese Garden.*

The one-acre Hannah Carter Japanese Garden (Garden) is located on Bellagio Road in Bel Air. Beginning in 1959, it was built over the course of two years and modeled after the gardens of Kyoto. Nagao Sakurai, a world-renowned Japanese landscape architect, designed the Garden. It is recognized as one of the finest examples of a Japanese garden in North America.

At the time of its development, the Garden was owned by Gordon and Verabelle Guiberson; they owned an adjacent residence (Residence) as well.

### *Agreements Concerning the Garden and Residence.*

Edward Carter (Carter) was a Regent with appellant from 1952 to 1988. In December 1964, appellant and Carter entered into an agreement (1964 Agreement) to facilitate appellant's goal of acquiring the Guibersons' Garden and Residence. Carter agreed to assist appellant subject to certain "reservations and conditions" set forth in the 1964 Agreement. Simultaneously with the 1964 Agreement, appellant agreed to enter into an escrow to purchase the Garden directly from the Guibersons and Carter agreed to enter into an escrow for the direct purchase of the Residence.[1] In consideration of those mutual agreements, the parties further agreed that either during his lifetime or upon his

---

[1]     Appellant alleged that Carter funded the Garden purchase through a donation.

death Carter would give the Residence to appellant, reserving for himself a life estate and the ability of his wife Hannah Carter (Hannah)[2] to live in the Residence for two years after his death; the restrictions imposed on the entire parcel by a recorded deed from Pacific Southwest Savings and Trust (Pacific Deed) would remain applicable notwithstanding the separation of the parcel; appellant would accept the Residence subject to the restrictions in the Pacific Deed and the Residence would remain for use solely as a private residence for the chief administrative officer of the University of California or distinguished guests; and if appellant sold the Residence it would be sold with the Garden as a private residence.

In accordance with the 1964 Agreement, the Guibersons executed a grant deed in favor of Carter for the Residence and in favor of appellant for the Garden.[3]  The grant deed for the Garden was expressly subject to the conditions in the Pacific Deed and subject to "the additional covenant on the part of the Grantee to maintain the existing Japanese Garden located on the above described property in good condition and repair and in a manner consistent with the use of such Garden for purposes normally associated with its use in conjunction with a private residence, which covenant shall be deemed to be a covenant running with the land . . . ."

In 1971, Carter gave the Residence to appellant, reserving a life estate for himself. Then in 1982, the parties executed an amendment to the 1964 Agreement (1982 Amendment).  Because appellant determined it did not desire to use the Residence for the Chancellor or distinguished guests, the parties "decided upon the appropriate uses of the proceeds of sale of the residence and deletion of the requirement that the University sell the garden portion.  The University will agree to retain the garden portion in perpetuity and its Board of Regents has acted to name the garden the Hannah Carter Japanese Garden."  Carter desired to honor Hannah in naming the Garden after her.  The covenants in the 1982 Amendment retained Hannah's ability to rent the Residence for up to two

---

[2]     We use first names for convenience only; no disrespect is intended.

[3]     The record does not contain Carter's grant deed or the Pacific Deed.

years after Carter's death and the restrictions in the Pacific Deed. The covenants further provided that appellant would, after Hannah's occupancy, sell the Residence for private use and retain the Garden in perpetuity as the Hannah Carter Japanese Garden. The manner in which the proceeds were to be spent was specified in the following covenant, which included the establishment of several endowments for specific purposes identified in order of priority. The first priority was "[t]o establish an endowment of $500,000, the income to be used in perpetuity for the maintenance and improvement of the Hannah Carter Japanese Garden."

Carter passed away in 1996. By 1999, Hannah had occupied the Residence for two years and a second amendment to the 1964 Agreement (1999 Amendment) gave her the right to rent the residence for an additional three years with an option to renew. The 1999 Amendment—entered into by appellant and Hannah—contained recitals that restated the provisions of the 1964 Agreement and the 1982 Amendment, including appellant's agreement that it would retain the Garden in perpetuity. The next section of the 1999 Amendment was entitled "Covenants," and the first covenant incorporated all recitals by reference. The second covenant gave Hannah her right to rent the Residence for the extended period. The third covenant provided appellant with the option either to keep or sell the Residence once Hannah's occupancy period ended. According to the fourth covenant, if appellant sold the Residence, it was bound to use the proceeds to fund the endowments specified in the 1982 Amendment. In the event appellant elected to retain the Residence, the 1999 Amendment obligated it to identify funding in an amount equal to the appraised value of the Residence and to provide that funding in the same order of priority specified in the 1982 Amendment. The 1999 Amendment modified certain endowment amounts, but the Garden endowment remained the same in amount and priority. If the Residence's appraised value was insufficient to fund the entire amount required for all endowments, appellant had no obligation to make up the difference. The final covenant of the 1999 Amendment provided that it superseded the 1982 Amendment in its entirety.

4

*Appellant's Effort to Sell the Garden.*

The Caldwells are Hannah's children. After Hannah passed away in April 2009, the Chancellor of the University of California, Los Angeles, sent a letter to Hannah's daughter Anne Caldwell in May 2009, assuring her that her mother's "name and legacy will live on through the Hannah Carter Japanese Garden, a beautiful reminder of her gracious and giving spirit." Neither the Chancellor nor anyone else on appellant's behalf notified the Caldwells of an intent to sell the Garden.

Approximately one year later, in July 2010, appellant filed a "Petition to Modify Trust" in probate court in Alameda County, seeking authorization to sell the Garden "in deviation from an agreement with the donor who funded its purchase." Appellant alleged "that changed circumstances have made its continued ownership and maintenance of the Garden impracticable; and, in addition, that continued operation of the Garden would thwart the broader charitable intentions of Carter, who wanted the proceeds of his gift to support the academic mission of the University." Appellant also complained about inadequate parking, having learned in 1989 that a former parking lot was on a neighbor's property; explained that the funds Carter allocated to the endowment for Garden maintenance were inadequate to meet annual expenses; noted that the Garden served no research or instructional purpose; and added that visitors had declined to approximately 2,000 per year. Alleging that it held the Garden in charitable trust from Carter, appellant served the petition on the Attorney General as the representative of all charitable trust beneficiaries and noted the Attorney General's lack of opposition. The Caldwells were not served with and did not otherwise receive notice of the petition.

In September 2010, the trial court granted the petition (Probate Order), giving appellant the discretion to sell the Garden and eliminating its obligation to fund the Garden endowment. Thereafter, appellant listed the Garden for sale at a price of

$5.7 million. The bid specifications contained no requirement that the Garden be preserved or maintained. The Residence was also listed for sale for $9 million.[4]

### *Preliminary Injunction Prohibiting Sale*.

After learning of the proposed sale, in May 2012 the Caldwells filed a complaint against appellant alleging causes of action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing. In their complaint the Caldwells indicated they sought "preliminary and permanent injunctive relief to compel specific performance by the Regents of their contractual obligation to maintain the Hannah Carter Japanese Garden, and to spend the sale proceeds from the residence portion in accordance with the itemized list in the Amended Contract." They applied ex parte for a temporary restraining order to prevent appellant from selling the Garden and require that it be maintained intact. The trial court denied the application, but permitted the Caldwells to seek a preliminary injunction via a noticed motion.

Accordingly, in June 2012 the Caldwells moved for a preliminary injunction, again seeking to prohibit the sale of the Garden and requiring appellant to maintain it during the pendency of the action. In support of their motion they submitted their own declarations as well as those from a landscape architect focused on preservation issues and a licensed real estate broker, and they sought judicial notice of the underlying agreements and the pleadings and Probate Order from Alameda County.

Appellant opposed the motion. It argued the Caldwells were not likely to prevail on the merits because their complaint was an impermissible collateral attack on the Probate Order and they lacked standing to challenge or enforce the charitable trust. It further argued there was no need to preserve the status quo and the balance of hardships weighed in its favor. In support of its opposition it submitted a declaration from the director of Campus Service Enterprises and offered many of the same exhibits attached to the Caldwells' request for judicial notice, adding correspondence and a transcript from

---

[4]    As the Caldwells point out, the $9 million listing price exceeded the $2.7 million needed to fund all the endowments initially specified by Carter and would have yielded more than $6 million that could be used for Garden maintenance and/or other purposes.

the hearing on the temporary restraining order. It also sought judicial notice of pleadings and other documents filed in connection with the Probate Order. Finally, it filed evidentiary objections to portions of the declarations offered by the Caldwells. In reply, the Caldwells emphasized the contractual nature of the dispute. They also filed evidentiary objections.

Following the initial hearing on the motion, the trial court allowed supplemental briefing on the issue of whether appellant is a public entity or a charitable institution. For the renewed hearing in July 2012, the trial court issued a tentative ruling granting the motion and ultimately adopted the tentative ruling as its final order. It ruled the Caldwells met their burden to show a probability of prevailing, a balance of hardships in their favor and irreparable harm in the absence of an injunction. With respect to the first element, the trial court ruled: "Plaintiffs sufficiently establish a reasonable probability of prevailing on the merits of the action based on their characterization of the transaction as an enforceable contractual exchange of consideration between UCLA and Edward Carter. In exchange for conveyance of the residential parcel, Carter accepted UCLA's promise to keep the Garden Parcel as the Hannah Carter Japanese Gardens in perpetuity. Plaintiffs also establish that UCLA has breached the 1982 Amendment by removing certain items of artwork and sculpture from the Gardens and by taking steps to sell the Garden Parcel entirely, including obtaining a probate court judgment allowing them to sell the Garden Parcel." The trial court expressly rejected appellant's arguments that enforcing their contractual obligation amounted to an unreasonable restraint on alienation, that the Caldwells' lawsuit was an impermissible collateral attack and that the Caldwells lacked standing. Finally, it sustained in part and overruled in part both parties' evidentiary objections.

The trial court initially entered a temporary restraining order and, following the Caldwells posting an undertaking, entered a preliminary injunction, restraining appellant from transferring ownership of the Garden and directing it to maintain the Garden. This appeal followed.

7

**DISCUSSION**

Appellant contends the trial court abused its discretion in granting the preliminary injunction, challenging only the determination that the Caldwells established a probability of prevailing on the merits of their claims. It asserts the trial court mischaracterized the transaction as a contract rather than a charitable trust and argues the trial court erred in rejecting its claims concerning restraint on alienation, standing and collateral attack. We find no merit to appellant's contentions.

## I. Standard of Review.

In determining whether to issue a preliminary injunction, courts evaluate two interrelated factors: "The first is the likelihood that the plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued. [Citations.]" (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69–70.) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.) Nonetheless, "[a] trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim. [Citation.]" (*Ibid.*)

We review an order granting a preliminary injunction for an abuse of discretion, determining whether the trial court acted within its discretion in evaluating the two interrelated factors. (*IT Corp. v. County of Imperial, supra,* 35 Cal.3d at pp. 69–70; *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1299.) "'The authorities are numerous and uniform to the effect that the granting or denial of a preliminary injunction on a verified complaint, together with oral testimony or affidavits, even though the evidence with respect to the absolute right therefor may be conflicting, rests in the sound discretion of the trial court, and that the order may not be interfered with on appeal, except for an abuse of discretion. [Citations.]' [¶] A trial court will be

8

found to have abused its discretion only when it has "'exceeded the bounds of reason or contravened the uncontradicted evidence.'" [Citations.] Further, the burden rests with the party challenging the injunction to make a clear showing of an abuse of discretion. [Citations.]" (*IT Corp. v. County of Imperial, supra,* at p. 69; accord, *Alliant Ins. Services, Inc. v. Gaddy, supra,* at p. 1300; *Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1316–1317.)

## II. The Trial Court Properly Exercised Its Discretion in Granting a Preliminary Injunction.

In a seven-page written order, the trial court ruled the Caldwells established a reasonable likelihood of prevailing on the merits. It concluded that appellant's obligation to maintain the Garden was consideration given as part of a bargained-for exchange.[5] More specifically, it ruled that even if Carter's promise in the 1964 Agreement to purchase and give the Residence to appellant could be characterized as giving rise to a gift or a charitable trust, the 1982 Amendment changed the nature of the transaction by requiring appellant to provide consideration in exchange for Carter's conveyance of the Residence and agreement to change the restrictions in the 1964 Agreement. The trial court determined the evidence showed the parties entered into an enforceable contractual exchange of consideration, which appellant breached by attempting to sell the Garden.

### A. The Caldwells Demonstrated a Probability of Prevailing on the Merits.

The linchpin of the trial court's conclusion was the finding that the Caldwells had established appellants' promise to maintain the Garden was contractual in nature. Under basic principles of law, a contract is a bargained-for exchange. (*Bard v. Kent* (1942) 19 Cal.2d 449, 452.) As codified in Civil Code section 1550, "It is essential to the existence of a contract that there should be: [¶] . . . [¶] 4. A sufficient cause or consideration." Civil Code section 1605 elaborates: "Any benefit conferred, or agreed to be conferred,

---

[5] It further concluded they demonstrated they would suffer irreparable harm if an injunction did not issue, and that the balance of hardships weighed in their favor. Those findings are not challenged on appeal and we therefore accept them as true. (See *City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1322–1323.)

upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." (Accord, *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1249 ["'To constitute consideration, a performance or a return promise must be bargained for. . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise'"]; *Estate of Bray* (1964) 230 Cal.App.2d 136, 141 ["Consideration may be either (1) a benefit conferred or agreed to be conferred upon the promisor or some other person; or (2) a detriment suffered or agreed to be suffered by the promisee or some other person"].)

We agree with the trial court that the 1964 Agreement and its two amendments demonstrated a reasonable probability the Caldwells could show appellant's "obligation to maintain the Garden Parcel in perpetuity as a Japanese garden named Hannah Carter Japanese Garden was bargained for consideration, without which no exchange would have occurred." Initially, the 1964 Agreement contained no restrictions on the use of the Garden beyond those that already existed via the Pacific Deed. Instead, with the exception of appellant's agreement to sell the Residence and Garden together in the event of sale, the mutual promises concerned only the Residence—Carter promised to acquire and later give the Residence to appellant, while appellant promised to permit Carter and later his surviving spouse to reside there and thereafter to utilize the Residence for the chief administrative officer or distinguished guests. In accordance with his initial promise, in 1971 Carter conveyed title to the Residence to appellant, reserving a life estate for himself.

The 1982 Amendment expressly superseded the 1964 Agreement and included a different set of promises supported by new consideration. (See *Gardner v. Shreve* (1949) 89 Cal.App.2d 804, 808 ["Normally any agreement to rescind or modify an existing bilateral relation finds sufficient consideration in the prior rights of the parties which are surrendered"]; see also *Johnson v. Holmes Tuttle Lincoln-Mercury, Inc.* (1958) 160

10

Cal.App.2d 290, 295 ["Mutual promises constitute consideration"].) Carter agreed to eliminate the requirements that the Residence be used for specific purposes after his and Hannah's tenancy and that the Residence and Garden be sold together. Instead, appellant was permitted to retain the Garden on the basis of promises that it would retain it in perpetuity in Hannah's name and use the proceeds from the sale of the Residence in a specified manner, including for the maintenance and care of the Garden.[6] Thereafter, although the 1999 Amendment expressly superseded the 1982 Amendment, in it appellant contracted with Hannah to maintain the Garden and received discretion to keep the Residence and provide alternate funding for the endowments.

On the basis of the exchange of mutual promises and evidence that appellant attempted to discontinue the Garden's maintenance, the trial court properly concluded the Caldwells demonstrated a reasonable probability of prevailing on their claims. Moreover, the trial court acted within its discretion in rejecting appellant's efforts to characterize its obligation as something other than a bargained-for exchange.

Appellant maintains the Residence and Garden were a gift from Carter designed to be held in charitable trust to promote the academic mission of the University of California. "'A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable

---

[6]    The obligation to maintain the Garden in its existing state as a Japanese garden was a covenant running with the land provided in the deed from the Guibersons. We note that "[t]here is general support in the California case law for the proposition that consideration cannot consist of the promise to perform a preexisting duty owed to a third person." (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 219.) Nonetheless, where a party's bargained-for performance includes something that is in addition to or different from the requirements of the preexisting duty, the law of consideration is satisfied even though the agreed consideration consists almost wholly of a performance that is already required. (*House v. Lala* (1963) 214 Cal.App.2d 238, 243; *Bailey v. Breetwor* (1962) 206 Cal.App.2d 287, 292.) Here, the 1982 Amendment contained requirements beyond those provided in the deed, including the obligation to name the Garden after Hannah and to provide assets for an endowment that would fund its maintenance. Thus, there was sufficient consideration.

11

purpose.' [Citations.] The elements essential to its creation are a proper manifestation by the settlor of an intention to create a trust [citation], a trust res [citations], and a charitable purpose [citations] promoting the welfare of mankind or the public at large, of a community, or of some other class of persons which is indefinite as to numbers and individual identities [citations]." (*City of Palm Springs v. Living Desert Reserve* (1999) 70 Cal.App.4th 613, 620–621, fn. omitted.)

As the trial court acknowledged, the evidence offered below failed to support the requisite elements. In particular, the 1964 Agreement and its amendments contained no language suggesting an intent to create a trust. Moreover, the Caldwells offered into evidence the Hannah Locke Carter Trust, thus demonstrating Hannah's awareness of how to manifest such intent. Further, there was no evidence showing that the parties treated the transactions involving the Residence or Garden as giving rise to a charitable trust. The court in *Van de Kamp v. Gumbiner* (1990) 221 Cal.App.3d 1260, 1271, explained that, by statute, "California requires charitable trusts to register with the Attorney General's office, and to file periodic reports concerning the administration of assets held in trust. [Citations.] The Attorney General may investigate charitable organizations to verify that the purposes of the trust are being carried out [citation] and can enforce compliance with the statute by instituting judicial proceedings [citation]. The Uniform Act provides that the Attorney General's participation is required in any suit to modify or to terminate a charitable trust. [Citation.]" Appellant offered no evidence to show it had registered a trust with the Attorney General's office, filed periodic reports or involved the Attorney General in any of the modifications concerning its Residence and Garden obligations before it filed suit in Alameda County.

Notwithstanding its failure to offer evidence showing it satisfied any of the statutory requirements associated with charitable trusts, appellant argues that the conditional nature of Carter's gift warrants the presumption it was given in charitable trust. (See *City of Palm Springs v. Living Desert Reserve, supra*, 70 Cal.App.4th at p. 622 ["Property given 'upon condition' that it be applied to certain charitable purposes is especially likely to be construed as having been given in a charitable trust"]; see also

12

*L. B. Research and Educ. Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171, 178 ["'Courts favor the construction of a gift as a trust over a conditional gift'"].) But as the trial court explained, evidence concerning the structure of the transaction here overcame any presumption of a charitable trust. In the authority cited by appellant, donors were attempting to enforce a restriction on donated property, whereas here the Caldwells were "attempting to enforce a promise the Regents made as to its own property, the Garden Parcel, in exchange for the donation or conveyance of the Residential Parcel." The trial court found this factual distinction significant: "When a donor imposes restrictions on a gift, the source of that power is the bundle of rights he possesses as owner of the property to be gift[ed]. The restriction itself is not part of an exchange under those circumstances. However, here, the alleged donation was the Residential Parcel, not the Garden Parcel. At the time of the 1982 Amendment, Edward Carter had no legal right to impose any restrictions on the Garden Parcel. As such, the 1982 Amendment's requirement that UCLA retain the Garden Parcel in perpetuity as the Hannah Carter Japanese Gardens was not a 'condition,' 'limitation,' or 'restriction' rooted in Edward Carter's rights in his own property, the Residential Parcel. It was instead a benefit Edward Carter bargained for and extracted from UCLA's bundle of rights in the Garden Parcel." We agree that the conditional nature of the transaction here did not support any presumption a charitable trust was formed.

Lastly, we are unpersuaded by appellant's public policy argument that the conclusion this was a bargained-for exchange instead of a charitable gift will frustrate or discourage future giving. Appellant failed to provide any evidence to support its argument. Beyond offering evidence to show that most of its gifts are restricted, it offered no evidence to show how enforcing the restriction contained in the 1982 Amendment and 1999 Amendment would deter other forms of charitable giving. Further, the court in *County of Solano v. Handlery* (2007) 155 Cal.App.4th 566 cited two public policy considerations in support of the enforcement of bargained-for restrictions, noting "that if courts were to permit public entities to accept from donors gifts of property subject to restrictions on the property's use, and then later jettison those restrictions on

13

their own whim, donors would be discouraged from making such gifts in the future," and citing the general "'maxim[] of equity . . . that "[h]e who takes the benefit must bear the burden." [Citation.]'" (*Id*. at p. 577.) Appellant's abstract concern fails to overcome the evidence demonstrating the contractual nature of its transactions with Carter and Hannah.

### B.     The Trial Court Acted Within Its Discretion to Conclude Appellant's Other Arguments Did Not Undermine the Caldwells' Showing.

Below and again on appeal, appellant raised three arguments in an effort to show that the Caldwells could not establish a probability of prevailing. We address each in turn.

Appellant first contends the requirement that it retain the Garden amounts to a restraint on alienation that is void and therefore cannot be enforced. "Civil Code section 711 provides: 'Conditions restraining alienation, when repugnant to the interest created, are void.' It is well settled that this rule is not absolute in its application, but forbids only *unreasonable* restraints on alienation. [Citations.] Reasonableness is determined by comparing the justification for a particular restraint on alienation with the quantum of restraint actually imposed by it. '[T]he greater the quantum of restraint that results from enforcement of a given clause, the greater must be the justification for that enforcement.' [Citation.]" (*Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 498–499; accord, *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1376.) The trial court ruled there was a reasonable possibility that the restriction would not be considered unreasonable, given "that the restraint was part of a bargained for exchange, that it is not inimical to any public policy and serves the public by preserving a unique garden." It noted that any assessment of reasonableness would involve a fact intensive inquiry. Appellant maintains that the restriction should have been deemed void as a matter of law given that it owned the Garden outright. California law is to the contrary: "[C]onditions restricting land use have been upheld by the California courts on numerous occasions even though they hamper, and often completely impede, alienation." (*Mountain Brow Lodge, I.O.O.F. v. Toscano* (1967) 257 Cal.App.2d 22, 25–26.)

14

Second, appellant asserts that the Caldwells lack standing to enforce the terms of the 1982 Amendment or the 1999 Amendment. But its position is premised on the notion that the Garden was held in charitable trust. (See *Patton v. Sherwood* (2007) 152 Cal.App.4th 339, 342 ["settlor of a charitable trust who retains no reversionary interest in the trust property lacks standing to bring an action to enforce the trust independently of the Attorney General"].) The trial court acted within its discretion to conclude the evidence supporting the Caldwells' characterization of the dispute as contractual in nature likewise established their standing to sue as Hannah's successors in interest and trustees of the Hannah Locke Carter Trust.[7] (See Code Civ. Proc., § 377.30 [an action on surviving claims "may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest"]; see also *Estate of Bowles* (2008) 169 Cal.App.4th 684, 691 ["As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf"].)

Finally, appellant contends that the Caldwells' action amounts to an unlawful collateral attack on the Probate Order. Appellant's argument is contingent on its characterization of the Garden as a charitable trust—a characterization unsupported by the evidence. On the basis of the evidence establishing the contractual nature of the exchange, the trial court acted within its discretion to determine the Caldwells demonstrated a probability of successfully attacking the Probate Order on the ground the probate court lacked jurisdiction. "Courts generally refer to jurisdiction over the parties and subject matter in any action as 'fundamental jurisdiction,' and where this is lacking there is an entire absence of power to hear or determine the case. [Citation.] Under such circumstances, 'an ensuing judgment is void, and "thus vulnerable to direct or collateral attack *at any time.*"' [Citation.]" (*County of San Diego v. Gorham* (2010) 186

---

[7] In any event, the Caldwells would have standing even if the transaction were characterized as a charitable trust. (See *Holt v. College of Osteopathic Physicians and Surgeons* (1964) 61 Cal.2d 750, 753 ["the Attorney General does not have exclusive power to enforce a charitable trust and that a trustee or other person having a sufficient special interest may also bring an action for this purpose"].)

15

Cal.App.4th 1215, 1225.) As the trial court reasoned, "the probate court's jurisdiction was based entirely on the Regents['] claim that the Residential and Garden Parcels were held in a charitable trust and the restriction regarding the Garden Parcel was a restriction on the trust res. As discussed above, Plaintiffs sufficiently establish the exchange was not a gift, it did not give rise to a charitable trust and even if there were a charitable trust, it would only apply to the donated property, which is the Residential Parcel. The probate court therefore had no subject matter jurisdiction to release the Regents from its contractual obligation under the 1982 Amendment."

Alternatively, the trial court noted that even under appellant's characterization of the transaction, the Probate Order was subject to collateral attack for lack of notice. Probate Code section 17203 requires that notice of certain proceedings, including a petition to modify a trust, be provided to a number of specified persons, including "(b) . . . any person, other than a trustee or beneficiary, whose right, title, or interest would be affected by the petition," and "(c) . . . (1) [e]ach heir and devisee of the decedent, and all persons named as executors of the will of the decedent, so far as known to the petitioner." The evidence was undisputed that the Caldwells had an interest in the Garden as Hannah's heirs and the trustees of her trust, and that they did not receive notice of the probate court proceedings. "[W]here notice is required to be given and is not given, the resultant order is void and may be collaterally attacked by anyone at any time. [Citation.]" (*Estate of Sigourney* (2001) 93 Cal.App.4th 593, 601.) Accordingly, the Caldwells also demonstrated a probability of successfully attacking the Probate Order for appellant's failure to comply with Probate Code section 17203.

## DISPOSITION

The order granting a preliminary injunction is affirmed.  The Caldwells are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *
                        FERNS

We concur:

_____, P. J.
     BOREN

_____, J.
     CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.